STEPHEN J. WINDHORST, Judge.
| gAppellants/defendants, The Ritz-Carlton Hotel Company, LLC (“The Ritz-Carlton”) and Marriott Claims Service (“MCS”), appeal the workers’ compensation judgment granting claimant/appellee, Phyllis Summers, wage benefits, medical benefits, and penalties and attorney’s fees. For the following reasons, the workers’ compensation judgment is affirmed in part; reversed in part; and remanded.
Claimant was employed by The Ritz-Carlton as a hairdresser, nail technician, and make-up artist. On March 3, 2013, claimant arrived early to work to perform a pedicure service for a guest and slipped and fell on water that leaked from the pedicure tub. ’ Claimant filed a Disputed Claim for Compensation on June 7, 2013. On September 11, 2013, claimant filed a supplemental and amending claim for compensation. After a trial on the merits, the workers’ compensation judge (“WCJ”) rendered judgment in favor of claimant on July 16, 2014.[1] Appellants filed this appeal.
*335 J^Standard of Review
In a workers’ compensation case, the employee bears the burden of proving an accident occurred, it occurred in the course and scope of her employment, the accident caused her injury, and the injury caused her disability. Guevara v. Brand Energy & Infrastructure Sews., 13-331 (La.App. 5 Cir. 10/30/13), 129 So.3d 625, 631, writ denied, 13-2782 (La.2/14/14), 132 So.3d 964. Gray v. H.B. Zachary Const. Co., 01-276 (La.App. 5 Cir. 9/25/01), 798 So.2d 271, 274, writ denied, 01-2847 (La.1/4/02), 805 So.2d 207.
The appropriate standard of review to be applied to the workers’ compensation judge’s findings of fact is manifest error or clearly wrong. Dean v. Southmark Constr., 03-1051 (La.7/6/04), 879 So.2d 112, 117. The findings of the workers’ compensation judge will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Id. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the ^evidence differently. Id. The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged her burden are factual determinations that will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Forbes v. Metro. Developmental Center, 09-901 (La.App. 5 Cir. 3/9/10), 35 So.3d 377, 373, citing, Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error, even in a finding based upon a credibility determination. Guevara, 129 So.3d at 631.
*336 Discussion
In their sole assignment of error, appellants contend the trial court erroneously found claimant was entitled to workers’ compensation benefits in the form of wage benefits, medical benefits, and penalties and attorney’s fees. Appellants claim this is a retaliatory claim for benefits under the Louisiana Workers’ Compensation Act brought by claimant against The Ritz-Carlton only after she was terminated for cause and not because she is entitled to workers’ compensation benefits.
Specifically, appellants contend that claimant did not suffer a work-related accident. In the event claimant did suffer a work-related accident, appellants contend claimant was not injured as a result of the accident, and her subsequent medical treatment was related to pre-existing and degenerative conditions, which were not aggravated or caused by the claimed work-related accident. Thus, appellants contend claimant is not entitled to medical treatment benefits, TTD |fibenefits or SEBs, and the award of penalties and attorney’s fees for claimant’s medical treatment and expenses was in error.

Whether claimant sustained, a work-related accident

A workers’ compensation claimant has the burden of establishing that a work-related accident occurred by a preponderance of the evidence. Jimmerson v. Johnson Storage & Moving Co., 13-962 (La.App. 5 Cir. 5/14/14), 142 So.3d 111, 115, citing, Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). . A claimant’s testimony alone may be sufficient to discharge her burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the claimant’s version of the accident, and (2) the claimant’s testimony is corroborated by the circumstances following the alleged accident. Jimmerson, 142 So.3d at 116. In determining whether the claimant has discharged her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Id. A claimant may corroborate her testimony concerning the accident with objective medical evidence or testimony from fellow workers or her spouse. Id.
Appellants contend claimant was suspended on May 3, 2013, and subsequently terminated for cause, i.e., violating hotel policies, on May 16, 2013. Appellants argue claimant was not injured as a result of a work-related accident; rather, claimant filed her claim for benefits as retaliation for her termination.
Claimant’s accident was not witnessed by anyone. On March 3, 2013, claimant arrived early to work to perform a pedicure on a guest. Claimant “put the jets on” the pedicure tub, and went around the corner to the dispensary to get her nail polish remover and implements. When she came out of the dispensary, she did not look down, but said, “there was water all over the floor and I hit the floor | Band went flying.” Claimant testified she hit her head and the entire left side of her body. Claimant also testified that after the accident, she reported her fall to Daisye Sudu-ran, the manager on duty. Ms. Suduran called engineering to come out and check the pedicure tub, and told claimant to go fill out an accident report with Loss Prevention. Claimant filed a report and continued to work the entire day. Claimant’s spa manager, Christine Rantz, was subsequently notified of the accident and Loss Prevention notified the workers’ compensation claims administration, MCS. Claimant went to Concentra Medical Centers the next day, March 4, 2013, saw the *337 company doctor, and informed him of the slip and fall.
No evidence was submitted by appellants to refute that claimant sustained a work-related accident. The WCJ did not err in finding claimant sustained a work-related accident. Accordingly, we affirm this portion of the judgment.

Whether, claimant was injured or aggravated a pre-existing injury as a result of the work-related accident

An employee must establish a causal link between the work-related accident and her injury to recover. Harrell v. St. Margaret’s Daughter’s Nursing Home, 09-0526 (La.App. 4 Cir. 11/4/09), 24 So.3d 941, 943. A claimant is not necessarily required to establish the exact cause of his disability or injury; however, the claimant must demonstrate by a preponderance of the evidence that the accident had a causal connection with it. Id., citing Buxton v. Sunland Constr., 34,995 (La.App. 2 Cir. 08/22/01), 793 So.2d 526, 531. “If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof.” Id., citing Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1179 (La.App. 2 Cir. 1991); Kelley v. Stone Container Carp., 31,790 (La.App. 2 Cir. 5/5/99), 734 So.2d 848, 851.
|7An employee’s disability is presumed to have resulted from an employment accident if before the accident the employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided the evidence shows there is a reasonable possibility of causal connection between the accident and the disabling condition. Hammond v. Fid. & Cas. Co. of New York, 419 So.2d 829, 831 (La.1982). This presumption is rebuttable. Id.
A preexisting condition does not prevent recovery through workers’ compensation because an employer takes his employee as he finds her. Bailey v. Jefferson Parish Gov’t. 13-905 (La.5/14/14), 142 So.3d 95, 101, citing Tate v. Cabot Corp., 01-1652 (La.App. 3 Cir.7/3/02), 824 So.2d 456, 461, writ denied, 02-2150 (La.11/22/02), 829 So.2d 1044. Aggravation of a preexisting injury may constitute a disabling injury when the claimant begins to suffer new symptoms after the accident. Hotard v. Murphy, Rogers, Sloss & Gambel, 11-1143 (La.App. 5 Cir. 5/31/12), 97 So.3d 407, 412. In Tate, the Third Circuit Court of Appeal explained:
[a] pre-existing disease or infirmity does not disqualify the claimant from receiving benefits if the workplace accident aggravated, accelerated, or combined with the disease to produce the disability for which compensation is claimed. Thus, the element of causation is satisfied if the employee’s work-related accident was a factor in bringing about the employee’s disabled status. Whether a causal relationship exists between the disability and the employment is a question of fact.
The employee’s workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual [sic] relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was *338 not caused by the work accident. Tate, 824 So.2d at 461.
| ¿Thus, if a claimant exhibited symptoms of her allegedly disabling illness in the distant past and she suffered no symptoms immediately prior to her workplace accident, the presumption of causation may attach to the claimant. Hotard, 97 So.Bd at 412.
Claimant claims she sustained injuries to her head and the entire left side of her body as a result of the March 3, 2013 slip and fall. Based on a review of the medical records, we find claimant only sustained an injury to her head from the accident. We further find the WCJ was manifestly erroneous in finding claimant sustained an injury or aggravated an injury to her neck, left shoulder, low. back, left hip, and left knee.

Head

Claimant claims she injured the left side of her head when she fell and as a result suffers with headaches. The medical records established claimant did not have any prior head injuries; thus, claimant was entitled to the rebuttable presumption her disability resulted from the work-related accident. Reviewing the evidence, we find the WCJ was partially correct in finding claimant sustained an injury to her head.
Claimant saw the company doctor, Dr. Ronald French, on March 4, 2013, and was diagnosed with a “contusion ” of the “face/ scalp.” Claimant was returned to work the same day with the modified restriction of “No prolonged standing/walking longer than 50%” and “Limited use of seated [sic] 50%.” The Family Doctors medical records also showed claimant was treated for headaches on March 4, 2013. Claimant informed her normal treating physician about the accident and she was diagnosed with a mild concussion.
On March 11, 2013, claimant was diagnosed again with a contusion to her “face/ scalp” by Dr. French. Claimant was returned to work with no restrictions. [9On March 18, 2013, claimant saw Dr. French for her headaches and was returned to work with no restrictions when her examination revealed normal results. On March 25, 2013, claimant went to the West Jefferson Medical Center (WJMC) Emergency Department where she was diagnosed with ■an acute headache. A CT of claimant’s brain was performed and the results came back normal. Claimant was returned to work with no restrictions."
Claimant returned to The Family Doctors on April 3, 2013, for a prescheduled six-month check-up, and was diagnosed with an “aching headache,” anxiety, depressive order, diarrhea, hyperlipidemia, nausea, and osteoarthritis. The medical records do not independently indicate claimant’s “headache” was related to this accident. Four days after claimant was suspended from her employment and over a month after her last visit, claimant returned to The Family Doctors for her headaches and was diagnosed with chronic left sided headaches on May 7, 2013. On July 29, 2013, over two months after claimant was terminated for violating hotel policies, claimant returned to The Family Doctors for headaches and was referred to neurologist, Dr. Dhanpat C. Mohnot.
On August 1, 2013, claimant went to Dr. Mohnot’s office for a consultation. She informed Dr. Mohnot she started having headaches after her accident on March 3, 2013 when she sustained a concussion. On August 21, 2013, Dr. Mohnot’s medical records stated claimant “may” have “left hem-icranias continua.” Dr. Mohnot’s medical records list claimant’s onset of headaches as March 3, 2013, based on information obtained from claimant. In September 2013, Dr. Mohnot’s records showed claim *339 ant was “feeling 50% better.” On October 15, 2013, Dr. Mohnot found claimant was “overall better.”
We find the trial court was manifestly erroneous in part in finding claimant injured her head as a result of the accident. Claimant sought treatment |inimmediately after her accident and was diagnosed with a contusion of her head and a mild concussion. The medical records established claimant sustained headaches consistently during the month of March after the accident. Claimant’s medical records indicate that claimant did not have any head injuries prior to this accident. Claimant was entitled to the rebuttable presumption her headaches were caused by hitting her head on the floor. The burden then shifted to appellants to produce evidence and persuade the trier of fact that it was more probable than not that the injury was not caused by the work-related accident.
Appellants rebutted claimant’s presumption in part. Claimant’s subsequent treatment after March for her headaches was not supported by the medical records. In April 2013, claimant went to The Family Doctors for a regular pre-scheduled six month visit, not because she was suffering from her headaches. While she was diagnosed at the April visit with headaches, she was also diagnosed with anxiety, depressive disorder, diarrhea, hy-perlipidemia, nausea, and osteoarthritis. The medical records do not clearly indicate claimant was treated in April for headaches related to this accident. Claimant did not seek medical treatment for her headaches again until May 7, 2013, four days after she was suspended and two months after her last appointment for headaches related to this accident. There is no independent medical evidence that claimant’s headaches subsequent to March were related to this accident. When the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, as it does in this case with claimant’s head injury and headaches after March, then the claimant failed to carry her burden of proof. Considering the timing and facts of this case, we find appellants rebutted claimant’s presumption her headaches after March 2013 were related to this accident. Accordingly, we affirm in part the trial court’s finding that claimant’s Inheadaches in March were related to this accident and reverse in part the trial court’s finding that claimant’s headaches subsequent to March were related to claimant’s accident, for the reasons stated above.
Neck[2] and Left Shoulder
Claimant contends she injured her left shoulder in the fall. We find claimant has failed to carry her burden of proof and the WCJ was manifestly erroneous in finding claimant injured and/or aggravated her left shoulder.
On March 4, 2013, Dr. French diagnosed claimant with a contusion of the “shoulder.” On the same day, The Family Doctors records showed that an x-ráy taken of claimant’s shoulder was normal. On March 11, 2013, Dr. French’s medical records showed claimant’s left shoulder was better. On March 18, 2013, Dr. French diagnosed claimant with a cervical strain after claimant presented with pain in her left shoulder and neck. Dr. French made the same diagnosis on March 25, 2013. On *340 May 7, 2013, The Family Doctors diagnosed claimant with left shoulder pain.
After a thorough review of the evidence, we find none of the medical records independently stated claimant’s. shoulder pain was causally related to this accident. In fact, the medical records established claimant had pre-existing neck and shoulder injuries. Claimant was not entitled to the rebuttable presumption and failed to prove by a preponderance of the evidence her shoulder was injured in this accident.
On January 16, 2013, less than two months prior to this accident, claimant went to The Family Doctors for neck and shoulder pain. The medical records note claimant stated she has had neck pain for years and her neck pain had worsened 11gover the last 2-3 weeks with increased stiffness. The radiology report stated claimant has “mild-moderate multilevel degenerative change of cervical spine.” On the same day, claimant was seen at WJMC where claimant’s shoulder and cervical spine were x-rayed. The x-ray of claimant’s shoulder was normal. The xray of claimant’s spine showed “mild moderate multilevel degenerative change of cervical spine; hypertrophy at several levels of cervical spine.” On February 13, 2013, less than one month prior to this accident, claimant saw Dr. Grimm and his medical records showed claimant had “neck pain with scapular pain.” Dr. Grimm’s records also provided claimant’s “neck pain with radiculopathy to shoulder present for months.” Claimant was diagnosed with cervical radiculopathy. This diagnosis is consistent with Dr. Grimm’s subsequent medical records wherein he diagnosed claimant with cervical radiculopathy on June 4, 2013 and July 9, 2013 and noted the “onset” date to be February 13, 2013, not March 3, 2013.
Based on the medical records, the WCJ was manifestly erroneous in finding claimant injured or aggravated a pre-existing condition to her left shoulder. The claimant failed to provide sufficient evidence or testimony to support her claim considering the contradictory medical records. Thus, we reverse that portion of the judgment finding claimant injured or aggravated her pre-existing condition to her left shoulder.

Low back and Left hip

Claimant also argued she sustained an injury to her low back and left hip when she fell. The WCJ was manifestly erroneous in finding claimant sustained an injury or aggravated a pre-existing condition to her low back and left hip.
On March 14 of 1997 or 1998, claimant was walking at a St. Patrick’s Day parade and was hit by a car going 70 mph. Claimant was thrown and landed on her back on a vehicle. As a result of this accident, claimant sustained a compression | ^fracture to her spine and had a back fusion. In 2011, claimant was informed of degenerate changes in her lower spine and was also diagnosed with lumbago and lum-bosacral neuritis.
On January 4, 2012, claimant presented to The Family Doctors for pain primarily located in her hip. Claimant presented with complaints of left hip pain with radiation to her left lower extremity for three weeks, with a history of lumbar degenerative disc disease. She was diagnosed with lumbar degenerative disc disease and sciatic of the left side. On January 12, 2012, claimant went to The Family Doctors again for pain in her left hip and side. Claimant complained of low back pain worse on left side with radiation to lower left extremity for five weeks, with a history of lumbar degenerative disc disease. Claimant was diagnosed with lumbar disc disease and sciatica of the left side. The radiology report from the same day confirms that claimant has an “old compression deformity of L2 vertbral body, chronic *341 in nature; displaced narrowing at the L3/4 L4/5 levels with degenerative spurring at both levels; degenerative.” On the same day, claimant saw Dr. Grimm and an x-ray of her lumbar spine confirmed degenerative changes. Claimant returned to The Family Doctors on January 18, 2012, for a follow-up and was diagnosed with lumbosa-cral neuritis. Claimant saw Dr. Grimm on January 18, 2012, for pain in her low back and radicular left lower extremity. Claimant was diagnosed with sciatica and degenerative changes to claimant’s lumbar spine were noted. Claimant was again diagnosed with sciatica on September 11, 2012, when she presented to Dr. Grimm for low back pain.
On March 4, 2013, claimant was diagnosed with a contusion of her left hip by Dr. French. On March 4, 2013, claimant also went to The Family Doctors and an x-ray of claimant’s hip revealed it was normal. On March 11, 2013, Dr. French’s medical records provided claimant’s left hip was better and the previous | upain had subsided. On March 18, 2013, claimant reported to Dr. French that her hip did not hurt at all. The medical records did not mention the left hip any further.
On April 5, 2013, claimant saw Dr. Grimm for a follow-up on her knee. Even though the medical records do not establish claimant complained of low back pain from the fall, Dr. Grimm’s normal examination revealed claimant had “tenderness present in lower lumbar spine” on palpation, with “moderate reduced ROM, no pain on ROM.” Claimant was diagnosed with lumbar radiculopathy and was ordered to start therapy for lumbar derangement. On April 30, 2013, she was diagnosed with lumbar radiculopathy despite her examination that revealed her “para-spinal musculature is nontender to palpation,” with “full range of motion in all planes.”
For the first time, on May 7, 2013, four days after claimant was suspended from her employment, claimant went to The Family Doctors with complaints of low back pain from the accident. Claimant was diagnosed with chronic back pain. On the same day, claimant also saw Dr. Grimm and complained for the first time of low back pain with radiation to her right leg. Claimant had “tenderness present in lower lumbar spine,” with full range of motion in all planes, and “straight leg raise test positive on the left.” Claimant was diagnosed with lumbar radiculopathy with the onset date of April 5, 2013. On June 4 and July 9, 2013, Dr. Grimm again diagnosed claimant with lumbar radiculopathy with an onset date of April 5, 2013. On August 9, 2013, claimant went to Dr. Grimm with low back pain and stated her pain had worsened over the past week even though she was doing therapy. There was no mention of back pain or diagnosis regarding low back pain in any of Dr. French’s medical records.
Based on the medical records, claimant had a pre-existing condition with her left hip, due to significant lumbar degenerative changes, and her low back since l1Bshe had her back fusion. Claimant was not exhibiting any symptoms immediately prior to this accident, thus, she was entitled to the presumption she was injured or aggravated a pre-existing condition in this accident.
Appellants sustained their burden of rebutting claimant’s presumption through the medical records and testimony at trial. The medical records established claimant’s contusion to her hip resolved within days after the accident. Dr. French’s medical records showed that her hip pain subsided eight days after the accident and claimant’s hip was pain free within 15 days. Despite claimant’s claim that she injured her low back from the fall, she did not report any low back pain to any of her *342 physicians until May 7, 2013, four days after she was suspended. Furthermore, there is no deposition or live testimony from any of the-physicians to establish that claimant’s low back pain was caused or aggravated by this accident. Dr. Grimm was sent a questionnaire concerning his treatment of claimant. At no point in Dr. Grimm’s answers or medical records did he state claimant’s low back pain was caused or aggravated by this accident. Considering the medical records and the timing of claimant’s complaints of low back pain, we find the WCJ was manifestly erroneous in finding claimant injured or aggravated her pre-existing condition concerning her left hip and low back and we reverse this portion of the judgment.

Left knee

Claimant contends she injured or aggravated a pre-existing condition with her left knee. A review of the medical records reveals claimant did not sustain her burden of proof and the trial court erred in finding the March 3, 2013 accident aggravated claimant’s pre-existing left knee condition.
Claimant’s medical records show she started having left knee pain in February 2009 and she was referred to Dr. Grimm. In 2009, Dr. Grimm began | ^giving claimant injections in her knee. Claimant consistently received treatment from Dr. Grimm for her left knee from 2009 until immediately prior to the March 3, 2013 accident. In fact, the medical records showed that claimant sustained a new injury to her left knee on February 13, 2013, less than a month before this accident. We also note that after the accident claimant saw Dr. Grimm on March 8, March 19, and March 22 for treatment to her left knee and did not mention the slip and fall. The medical records showed that claimant mentioned the slip and fall to Dr. Grimm for the first time on March 26, 2013. However, Dr. Grimm’s medical records do not support claimant’s contention that she injured or aggravated her pre-existing condition in her left knee as a result of this accident. Dr. Grimm’s medical records consistently provide that the onset date of claimant’s latest knee problem was February 13, 2013. Claimant did not provide any deposition or live testimony from Dr. Grimm stating that this accident aggravated her pre-existing condition in her left knee. Thus, due to the conflicting medical records showing claimant’s left knee injury was related to a February 13, 2013 injury, claimant did not establish by a preponderance of the evidence she injured or aggravated her preexisting condition in her left knee. Accordingly, the WCJ was manifestly erroneous in finding that this accident aggravated claimant’s pre-existing left knee condition and we reverse this portion of the judgment.
Thus, for the reasons stated above, we find the WCJ was manifestly erroneous in part in finding claimant proved all of her injuries were caused or aggravated by her work-related accident. The judgment is reversed in part and affirmed in part as stated above.

Whether claimant is entitled to TTD benefits

The WCJ awarded claimant temporary total disability (TTD) benefits from 1) March 3, 2013-March 4, 2013; -2) March 26, 2013-April 8, 2013; and 3) May |174, 2013-June 7, 2013. The parties stipulated to claimant’s weekly wage as $605.00. Under La. R.S. 23:1221(l)(c), to establish entitlement to TTD benefits, a claimant must prove by clear and convincing evidence that she is physically unable to engage in any employment or self-employment due to her injury. Jimmerson v. Johnson Storage & Moving Co., 13-962 (La.App. 5 Cir. 5/14/14), 142 So.3d 111, 116-117, citing Veazie v. Gilchrist Const. Co., 04-118 (La. *343 App. 3 Cir. 6/2/04), 878 So.2d 742, writ denied, 04-1692 (La.10/8/04), 883 So.2d 1018. A claimant must present objective medical evidence to establish by clear and convincing evidence that she is unable to engage in any type of employment. Fassitt v. Jefferson Parish Hosp. Serv., 07-695 (La.App. 5 Cir. 12/27/07), 974 So.2d 757, 760.
March 3, 2013-March J, 2013
Appellants contend the WCJ erred in awarding TTD benefits for March 3, 2013-March 4, 2013 based on the evidence and La. R.S. 23:1221(1). Specifically, appellants contend La. R.S. 23:1221(l)(b) provides that “temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.”
Claimant’s work-related accident occurred in the early hours of March 3, 2013. Although claimant filled out an accident report, claimant remained at work the rest of the day. Claimant was compensated for her work in her paycheck. Pursuant to La. R.S. 23:1221(l)(b), claimant is not entitled to TTD benefits for March 3, 2013.
Claimant was scheduled off for a personal day on March 4, 2013. Claimant testified she went to see Dr. French who diagnosed her with contusions and |1Rreleased her to return to work with modified restrictions on sitting, standing, and walking. Claimant was able to work on March 4, 2013 and thus, she was not entitled to TTD benefits.
Accordingly, we find that claimant failed to prove by clear and convincing evidence that she was physically unable to engage in any employment March 3, 2013-March 4, 2013, due to her alleged injuries related to her work-related accident. The WCJ erred in awarding TTD benefits for this time period; thus, we reverse this portion of the judgment.

March 26, 2013-April 8, 2013

Claimant requested and received a leave of absence (“LOA”). Dr. Grimm signed the LOA stating claimant would be under his care from March 26, 2013-April 26, 2013. Dr. Grimm also provided claimant with a “Disability Certificate” stating claimant would be under his care until April 26, 2013, and signed it on March 26, 2013. Claimant testified the LOA was related to her work-related accident. Claimant voluntarily returned to work on April 8, 2013. Claimant continued to work full time without restrictions from April 8, 2013 until her termination on May 3, 2013.[3] Claimant testified she wanted Dr. Grimm to put her on “limited duty” when she came back, but he did not. She testified that she was not able to perform her duties to the same ability as she had prior to her LOA. However, claimant admitted that in her prior deposition taken in August 2013, she testified she was able to perform her duties to the same ability. The Ritz-Carlton paid claimant TTD benefits in the amount of $807.07[4] for her LOA.[5]
*344 |19On the LOA, Dr. Grimm wrote claimant’s injury commenced on February 13, 2013. Dr. Grimm’s medical records provided claimant sustained a new injury to her left knee on February 13, 2013. Claimant testified she disagreed with both records and she requested a LOA based on the injuries she sustained in this accident. She further argued she did not have a new knee injury on February 13, 2013. The “Disability Certificate” issued by Dr. Grimm did not state why claimant was disabled or why she would remain under his care until April 26, 2013. Dr. Grimm’s medical records provided he saw claimant for “left knee pain and swelling” on March 26, 2013. Dr. Grimm’s notes for that date stated claimant injured her “right knee” when she fell at work. However, the same records showed claimant sustained her left knee injury on February 13, 2013, not in a fall at work on March 3, 2013.
Claimant failed to prove by clear and convincing evidence she was physically unable to engage in any employment from March 26, 2013-April 8, 2013 due to injuries related to her work-related accident. The medical records failed to show claimant’s injuries, and subsequent LOA were causally related to this accident. Furthermore, Dr. Grimm did not testify at trial nor did claimant depose Dr. Grimm to clarify whether her injuries were related to this accident. Thus, the WCJ committed manifest error in awarding claimant TTD benefits for the time period from March 26, 2013 — April 8, 2013. Accordingly, we reverse this portion of the judgment.
IsoMay k, 2018[6] -June 7, 2018
Dr. Grimm provided claimant with another “Disability Certificate” on May 7, 2013, which stated claimant was under his care until June 7, 2013 and she was allowed to return to work on June 7, 2013, without restrictions. The certificate stated it was due to “knee pain.” Dr. Grimm’s medical records of May 7, 2013, noted claimant complained of “left knee pain” and “low back pain with radiation right knee.” It further provided claimant “Continues to flare her left knee osteoarthritis at work complicated by sciatica previous lumbar fusion.” His medical records did not state claimant’s disability was related to this accident.
Claimant was suspended on May 3, 2013, for violating hotel policies, and terminated on May 16, 2013, with the termination retroactive to May 3, 2013. Claimant admitted she received three written warnings in a twelve-month period, and pursuant to hotel policy,- that was a valid ground for termination. Claimant did not appeal this decision. She testified she did not want to go back to work for The Ritz-Carlton.
Based on the evidence, claimant failed to prove by clear and convincing evidence she was physically unable to engage in any employment from May 7, 2013-June 7, 2013, due to her injuries related to her work-related accident. The record did not establish claimant’s “disability” was related to this accident. Furthermore, claimant was terminated and did not appeal that decision because she no longer wanted to work for The Ritz-Carlton, not because she was disabled. We further find it inter *345 esting claimant had been working regular duty from April 8, 2013 until she was suspended on May 3, 2013, and four days later claimant | ^received a “Disability Certificate” stating she was unable to work. Accordingly, this part of the judgment is reversed.

Whether claimant is entitled to SEBs

The purpose of supplemental earnings benefits is to compensate an injured employee for the wage earning capacity she has lost as a result of her accident. Poissenot v. St. Bernard, 09-2793 (La.1/9/11), 56 So.3d 170, 174, citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. If an employee sustains a work-related injury that results in an inability to earn ninety percent (90%) or more of her average pre-injury wage, then the employee, is entitled to receive supplemental earnings benefits. La. R.S. 23:1221(3) (a)(i).
Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury caused her inability to earn ninety percent (90%) or more of her average pre-injury wage. Richard v. HSLI & Touro Infirmary, 12-873 (La.App. 5 Cir. 5/23/13), 119 So.3d 617, 621, citing, Clay v. Our Lady of Lourdes Regional Medical Center, Inc., 11-1797 (La.5/8/12), 93 So.3d 536, 539. Once an employee meets this burden, the burden shifts to the employer who, in - order to defeat the employee’s claim for supplemental earnings benefits, must prove by a preponderance of evidence that the employee is physically able to perform a certain job, and that the job was offered to the employee or was available to the employee in her or the employer’s community or reasonable geographic region. Id.; La. R.S. 23; 1221(3)(c)(i); Poissenot, 56 So.3d at 174.. If the employer meets this burden, then the employee must establish by clear and convincing evidence that she is unable to engage in any employment. La. R.S. 23:1221(3)(e)(ii); Barton v. Wausau Insurance Company, 545 So.2d 1248, 1252 (La.App. 2 Cir.1989).
| ¡^Appellants first contend the WCJ erred in. awarding SEBs to claimant because she did not calculate the value of the SEBs. Secondly, appellants contend the award of SEBs was in error for the time periods established by the WCJ.

March 5, 2013-March 25, 2013

A review of the record established claimant was not entitled to SEBs from March 5, 2013-March 25, 2013. Claimant worked “full duty” from the time of the accident until March 25, 2013. Claimant earned the same average weekly wage she was earning prior to this accident. Thus, claimant failed to show she was unable to earn ninety percent (90%) or more of her average pre-injury wage from March 5, 2013-March 25, 2013. Therefore, this part of the judgment is reversed.

April 9, 2013-May 3, 2013

The evidence and. testimony revealed claimant was working, “full duty” from April 9, 2013, when she voluntarily returned early from her LOA, until May 3, 2013, when she was suspended from her job. Claimant earned ninety percent (90%) or more of her average pre-injury wage. Thus, claimant failed to sustain her burden of proof and thus, this portion of the judgment is reversed.
June 8, 2013-September 30, 2013 and November 1, 2013-present[7]
It is the employee’s burden to show, by a preponderance of the evidence, *346 that the inability to earn ninety percent (90%) of her pre-injury wages was caused by the work-related injury and not by some other cause. Poissenot, 56 So.3d at 174. The record established claimant was released back to work without restrictions on June 7, 2013. Claimant could have returned to her job with The Ritz-Carlton and earned her pre-injury wage. However, claimant conceded she received three written warnings and this was a valid ground for termination under 183hotel policy. Claimant was suspended on May 3, 2013, and terminated on May 16, 2013, for violating this hotel policy, with her termination retroactive to May 3, 2013. Witnesses for The Ritz-Carlton testified that The Ritz-Carlton would have accommodated claimant’s restrictions. Thus, but for her termination for cause, claimant had the ability to earn ninety percent of her pre-injury wage.
The “Disability Certificate” issued to claimant for May 7, 2013-June 7, 2013, provided claimant could return to work with no restrictions. Thus, as of June 8, 2013, claimant did not have any alleged disability to prevent her from working. Claimant testified she did not appeal her termination because she no longer wanted to work for The Ritz-Carlton. Claimant also testified that The Ritz-Carlton provided vocational rehabilitation services to her, including available jobs that would accommodate any restrictions she might have. She further testified she did not seek employment with any of those jobs; rather, she found a “light duty” part-time job.
Claimant was seen by Dr. Robert Steiner for an independent medical evaluation on October 1, 2013. Dr. Steiner examined claimant and diagnosed her with “multilevel degenerative cervical disc disease without radiculopathy,” “multilevel degenerative lumbar disc disease,” and a “long history of left knee pain secondary to left knee arthritis.” Dr. Steiner found that the work-related accident did not aggravate these pre-existing conditions. Specifically, Dr. Steiner reported that “Objective evidence of worsening of her pre-existing condition as it relates to the incident of 3/3/13 is not observed.” Because of her degenerative conditions, Dr. Steiner found that claimant should avoid heavy labor activity; she should be allowed to sit and stand periodically when needed; and she should avoid kneeling, squatting, climbing and crawling activities.
| ¡.¿Claimant failed to establish her inability to work and earn ninety percent (90%) of her average pre-injury wages and her wage loss was due to a work-related injury, thus the burden did not shift to The Ritz-Carlton to prove jobs existed for claimant in her geographic area that would have paid her ninety percent (90%) of her pre-injury wages.[8] Thus, we find the WCJ committed manifest error in finding claimant was entitled to SEBs for the time periods from June 8-September 30, 2013 and November 1, 2013 to present. Accordingly, we reverse these portions of the judgment.

Whether claimant is entitled to medical expenses, medication expenses, and travel expenses (including out of pocket medical expenses) incurred in connection with this accident

La. R.S. 23:1203(A) provides an employer shall furnish all necessary drugs, sup *347 plies, hospital care and services, medical and surgical treatment, and any nonmedical treatment. La. R.S. 23:1203(D) provides the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services, medicines, ... which the employer is required to furnish.
We find the WCJ was manifestly erroneous, in part, in finding The Ritz-Carlton must “pay for all medical expenses, medication expenses, and travel expenses in connection with the injuries on March 3, 2013” without further specification of the exact amount of those expenses. Claimant is entitled to medical expenses, medication expenses, and travel expenses incurred during the month of March 2013, that are related to her head injury. Although claimant testified that she had medical, medication, and travel expenses for the month of 12SMarch 2013, related to her head injury, and submitted some supporting documentation of these expenses, we are unable to determine from the evidence submitted the exact amount of expenses to which claimant is entitled. Accordingly, we remand this portion of the judgment to the WCJ to calculate claimant’s medical, medication, and travel expenses, if any, incurred during the month of March 2013, that are related to her head injury.
Additionally, claimant did not prove she sustained any other injuries or aggravated any pre-existing conditions as a result of this accident. Accordingly, the WCJ was manifestly erroneous in finding claimant was entitled to medical, medication and travel expenses, including out of pocket expenses, for any treatment of any other alleged injury or aggravation of pre-exist-ing condition. Therefore, this portion of the judgment is reversed.

Whether claimant is entitled to penalties and attorney’s fees

Appellants contend the WCJ was manifestly erroneous in awarding claimant penalties and attorney’s fees. Appellants contend claimant was not entitled to compensation benefits in the form of wage and medical benefits, thus, they cannot be held liable for penalties and attorney’s fees.
La. R.S. 23:1201(F) imposes a penalty for “failure to provide payment.” Penalties will not be imposed if “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” Id. The determination of whether an employer or insurer should be cast with penalties and attorney’s fees is a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review. Richard v. HSLI & Touro Infirmary, 12-873 (La.App. 5 Cir. 5/23/13), 119 So.3d 617, 623, citing Authement v. Shappert Engineering, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188-1189.
I^Based on the timing and circumstances of this case, we find the WCJ was manifestly erroneous in finding The Ritz-Carlton 1) “failed to reasonably controvert claimant’s entitlement to medical benefits, medication expenses, diagnostic testing, temporary total disability benefits, transportation expenses, and supplemental earnings benefits;” and 2) “refused to pay medical or indemnity in a timely manner and claimant is entitled to multiple penalties and attorney’s fees for their actions.” We find appellants reasonably controverted these claims, for the stated reasons above. Accordingly, we reverse the WCJ’s award of penalties in the amount of $8,000.00 and attorney’s fees in the amount of $8,000.00.
*348 Conclusion
For the reasons stated above, the WCJ’s judgment is affirmed in part; reversed in part; and remanded.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. The workers' compensation judge found that: 1) the claimant is entitled to temporary total disability (TID) benefits from March 3, 2013-March 4, 2013; from March 26, 2013-April 8, 2013; and from May 4, 2013-June 7, 2013, in the amount of $605.00 per week; 2) the claimant is entitled to supplemental earnings benefits (SEBs) from March 5, 2013- *335 March 25, 2013; from April 9, 2013-May 3, 2013; and from June 8, 2013 September 30, 2013, to be calculated by using her average weekly wage of $1,385.35, in accordance with law for the time period that she earned less than ninety percent of her pre-injury wages; 3) the claimant is entitled to SEBs from November 2, 2013 to the present and continuing when she returned to work earning $285.00 per week for the time period that she earned less than ninety percent of her pre-injury wages; 4) the claimant suffered injuries and aggravation of injuries from the March 3 accident to her head, left shoulder, left hip, left back, and left knee; 5) the defendants shall pay for all medical expenses, medication expenses, and travel expenses in connection with the injuries sustained on March 3; 6) the claimant had a pre-existing left knee injury which was aggravated by the accident on March 3; 7) the defendant shall reimburse claimant for all out of pocket medical expenses incurred by the accident on March 3; 8)the defendants failed to reasonably controvert claimant's entitlement to medical benefits, medication expenses, diagnostic testing, TID benefits, transportation expenses, and SEBs; 9) defendants refused to pay medical or indemnity in a timely manner and claimant is entitled to multiple penalties and attorney's fees for their actions; 10) penalties are assessed in the total amount of $8,000.00 for failure to timely pay and authorize medical expenses, medication expenses, diagnostic testing, medical evaluations and treatment, TID benefits, SEBs, and transportation expenses; 11) attorney’s fees are assessed in the amount of $8,000.00; 12) defendants will be given credit for any worker’s compensation benefits which were paid by them in accordance with law; 13) all costs and interest will be paid by defendants, including filing costs; and 14) judgment is hereby rendered in favor of claimant.

. Claimant's neck is mentioned in this opinion because claimant often discussed pain in her neck when she had pain in her shoulder. Thus, for purposes of this opinion, claimant's neck and shoulder’ are discussed together. We are cognizant the WCJ only found claimant sustained an injury to her left shoulder and there is no mention of claimant's neck.

. The testimony and evidence established that claimant was suspended on May 3, 2013, and was terminated for cause on May 16, 2013, with the date of termination retroactive to May 3, 2013.

. Based on the evidence submitted, The Ritz-Carlton-Carlton paid more than the TTD rate claimant was entitled to for TTD benefits from March 26, 2013-April 8, 2013.

. La. R.S. 23:1224 provides:
No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury *344 continues for two weeks or longer after date of the accident, compensation for the first week shall be paid after the first two weeks have elapsed.
Moreover, claimant was incorrectly paid TTD benefits for an unrelated injury. Dr. Grimm noted the condition related to and necessitating the LOA began on "2/13/13/” prior to this accident.

. The WCJ erred in finding the time period was May 4, 2013-June 7, 2013. The evidence established the "disability certificate” time period was from May 7, 2013-June 7, 2013.

. The month of October 2013 is not addressed in the workers' compensation judgment. *346 However, we do not need to address that issue because it is not before this Court.

. Claimant and The Ritz-Carlton both submitted into evidence the vocational rehabilitation records wherein modified positions were available to claimant, even though she chose to find and accept a lower paying part-time job on November 1, 2013.