WINDHORST, J.
| iThis is a worker’s compensation case. Norman Abarca was employed by Miken Specialties as a laborer. He was assisting in removing scaffolding on May 1, 2012 when a worker above him dropped a plank of wood, which struck him on his hardhat. Mr. Abarca stated that he momentarily lost consciousness and he fell to his knees. He further stated that he felt pain the next day, but did not report the accident at that time because he was told he would be fired. Two weeks later, he reported the accident and was examined by a company doctor, who diagnosed neck strain, and released him to work. Mr. Abarca continued to work full duty, with overtime, until July 20,2012, when he was laid off.
Thereafter, on September 5, 2012, Mr. Abarca filed a disputed claim for compensation.[1] On March 21, 2013, he and Miken entered into a consent judgment in which they agreed that there was an accident on May 1, 2012, that the accident occurred during the course and scope of Mr. Abar-ca’s employment with Miken, and that Mr. Abarca injured his neck as a result of the May 1, 2012 accident. Mr. Abarca reserved his right to pursue future medical and indemnity benefits. Miken agreed to pay continuing SEBs, reserving its rights to challenge Mr. Abarca’s entitlement to any future benefits, including the right to challenge future disability status and medical treatments.
On November 18, 2014, Miken filed a disputed claim for compensation and a Motion to Modify Consent Judgment. Miken contended that Mr. Abarca’s symptomolo-gy at that time was unrelated to the May 1, 2012 accident, and therefore the consent judgment should be modified to eliminate any additional medical or indemnity benefits. On June 3, 2015, Mr. Abarca filed a disputed claim for compensation, Mr. Abarca contended that, as a result of the work accident, his injuries included cervical and lumbar spine injuries, injuries to the right knee and 12both wrists, neurological brain injury and psychological injury, and that his requests for medical treatment had been denied. The claims were consolidated for litigation.
After trial on the merits, the worker’s compensation court rendered judgment which found that Mr. Abarca failed to prove that he was unable to engage in any employment and therefore the March 26, 2013 Consent Judgment should be modified to show that he is not entitled to additional indemnity benefits. The worker’s compensation court further found that Mr. Abarca failed to prove that he was entitled to a cervical surgery or treatment for alleged knee injury and failed to prove that the employer was arbitrary and capricious in denying these treatments. The *272 trial court ordered that the matter be dismissed with prejudice.
Mr. Abarca appeals from the ruling of the worker’s compensation court. Miken has filed an answer for appeal in this court, requesting that the judgment be modified to reflect a finding that none of Mr. Abarca’s symptoms at the time of trial were caused by the May 1, 2012 injury, which it contends is implicit in the judgment rendered.
EXCEPTION OF LACK OF SUBJECT MATTER JURISDICTION
After the record was lodged in this court, Mr. Abarca filed a declinatory exception of lack of subject matter jurisdiction. Mr, Abarca contends that pursuant to La. R.S. 23:1203.1J(1), exclusive original jurisdiction to determine whether medical treatment, care or services sought by a medical provider on behalf of a claimant was in accord with the medical treatment schedule rested with the Office Of Worker Compensation Medical Director, and therefore the worker’s compensation judge was without authority to rule that Mr. Abarca failed to prove that he was entitled to cervical surgery. Miken responds that the issue was not whether the surgery was medically necessary, but rather whether the condition ^complained of was caused by the accident, and therefore the trial court did have the jurisdiction to rule on the issue.
On October 15, 2014, the Medical Director denied the request for approval of cervical surgery. Mr. Abarca did not appeal from that decision. The worker’s compensation court in its judgment did not rule on the issue of whether cervical surgery should have been provided in accordance with the medical treatment schedule. Instead, it stated that Mr. Abarca failed to prove that he was entitled to cervical surgery and he failed to prove that the employer was arbitrary and capricious in denying same. This was within the jurisdiction of the worker’s compensation court. Mr. Abarca’s exception of lack of subject matter jurisdiction is denied.
STANDARD OF REVIEW
In a workers’ compensation case, the employee bears the burden of proving an accident occurred, it occurred in the course and scope of her employment, the accident caused her injury, and the injury caused her disability.
The appropriate standard of review to be applied to the workers’ compensation judge’s findings of fact is manifest error or clearly wrong. The findings of the workers’ compensation judge will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged her burden are factual determinations that will not be disturbed on appeal in the absence of manifest error or unless clearly wrong. (Citations omitted.)
Summers v. Ritz-Carlton New Orleans, 14-800 (La.App. 5 Cir. 05/28/15), 171 So.3d 329, 336, writ denied, 15-1256 (La. 09/25/15), 178 So.3d 569.
Jj_ FACTS
At the trial of this matter, Mr. Abarca testified as to the particulars of the acci *273 dent. He stated that he was employed by Miken, a company that erected and disassembled scaffolding. He was a helper, transporting the materials. On the date of the accident, May 1, 2012, he was assisting in erecting a scaffold. The workers were located in a stairway. Mr. Abarca was at the bottom end of a line passing material up to erect the scaffold. When the job was finished, the workers passed down the excess materials. Mr. Abarca stated that the person above him dropped a board and it landed on his hard hat. The board was twelve inches wide by two inches deep and ten feet long. The board was about five feet above him when it was accidentally released by a worker who was two steps above and five feet away from him. Mr. Abarca stated that when the board struck him, he fell on his right knee and his hand, and that he blacked out momentarily. At that point, he stopped working for the day. He was asked if he wanted to make an accident report, but he declined because he did not feel any pain.
Mr. Abarca further testified that the next day, his neck and lower back were hurting, and his right knee was swelling. He told his supervisor that he wanted to make an accident report, and his superior stated that if he made the report, they would both be fired because the report was not made at the time of the accident.
Two weeks later on May 15, 2012, after continual neck pain complaints, he was sent to the safety supervisor to file the report.[2] On that date, he was examined by Dr. Luke Lee of Prime Occupation Medication.[3] After an X-ray, Dr. Lee diagnosed neck strain and prescribed over-the-counter ibuprofen. Mr. Abarca was released to his regular duties.
IfiMr. Abarca testified that he continued to work for Miken until he was laid off on July 22, 2012.[4] After he was laid off, he called Miken and related that he still had neck pain. Miken sent him to Dr. Robert Steiner, an orthopedist, who examined him on August 16, 2012. According to Dr. Steiner, Mr. Abarca informed him that he had injured his neck, but made no mention of low back or knee pain. Dr. Steiner diagnosed an aggravation of a pre-existing degenerative cervical disc disease, with no findings of cervical radiculopathy, prescribed medications and released Mr. Abarca to light duty work, with restrictions against lifting and/or carrying more than ten pounds. In his deposition taken on March 4, 2013, Dr. Steiner was also questioned concerning his review of .the findings of a nerve conduction study conducted by Dr. .Shamsnia in January of 2013. The study showed carpal tunnel syndrome and cervical radiculopathy. Dr. Steiner stated that the carpal tunnel syndrome was not related to the work accident. Dr. Steiner further stated that he found no evidence of cervical radiculopathy when he-examined Mr. Abarca post-accident. Finally, Dr. Steiner stated that he saw evidence of degenerative disc disease when examining x-rays and that there was not a sufficient time period between the accident and the x-rays for the accident to have caused the condition.
On September 7, 2012, Mr. Abarca was hired by All South Consulting Engineers, and he remained employed until March 5, 2013 when he quit. Mr. Abarca testified *274 that he has not been employed since that time.
In September of 2012, Mr. Abarca began treatment with Dr. John Watermeier, orthopedic surgeon, along with Dr. Peter Zimmerman, who specialized in physical medicine, rehabilitation, and spine intervention, and Kimberly Melacon, Chiropractor. Mr. Abarca was treated by Dr. Watermeier until August of 2014. Dr. Wat-ermeier first saw Mr. Abarca three and one-half months Rafter the accident, on September 17, 2012, with complaints of headache, neck pain and movement restrictions, dizziness, and tingling in his arms, hand and legs.[5] Dr. Watermeier was informed by Mr. Abarca that he had suffered a work related accident. Dr. Water-meier concluded that Mr. Abarca suffered traumatic injury to the neck, and that his symptoms were consistent with cervical disc syndrome and possible nerve root impingement. An MRI of Mr. Abarca’s cervical spine was performed on October 10, 2012, and it revealed cervical disc hernia-tions with neurocompression. During the course of his treatment with Dr. Water-meier, Mr. Abarca was treated with chiropractic manipulation and physical therapy, along with spinal nerve root injections from Dr. Zimmerman. Also during the course of treatment, Mr. Abarca’s status fluctuated from regular duty to light duty with restrictions to disabled, and his prognosis was usually “fair to good.”
In February of 2014, Mr. Abarca began treatment with Dr. Donald Dietze, neurosurgeon, who was Mr. Abarca’s treating physician at the time of trial. Dr. Dietze’s medical records indicated that Mr. Abar-ca’s cervical sprain should have resolved within six months of his injury. He diagnosed that Mr. Abarca suffered from cervical radiculopathy, spinal stenosis, and neck pain, and that his options at that point were to live with the condition or undergo surgery.
Mr. Abarca was examined by Dr. Henry Eiserloh, III on behalf of Miken, on November 14, 2013. Dr. Eiserloh reviewed the medical records of Dr. Steiner, Dr. Watermeier, and Dr. Zimmerman, and he examined Mr. Abarca. He concluded that there was no mention of thoracic, lumbar spine or knee pain in the original reports, and therefore those injuries were not com-pensable as there was no temporal element. He also noted that the reports of the cervical spine MRI showed degenerative changes, however, he did not see the original flies. He further noted that there was a discrepancy between Dr. Watermeier and Dr. Zimmerman in that 17Pr. Zimmerman’s notes indicated that Mr. Abarca could perform light duty work; however, Dr. Wat-ermeier stated that he was disabled. Dr. Eiserloh stated that Mr. Abarca could return to work based on a functional capacity evaluation, and that this results of the evaluation would also be based on patient effort.
In an addendum to his original report, authored on July 7, 2014, Dr. Eiserloh stated that he was provided with the films of the MRI, which he reviewed. He concluded that the aggressive treatments suggested were related to chronic degenerative disease, and that the work related injury was cervical strain which should have resolved within three months of the initial injury.
The court ordered an Independent Medical Examination, which was performed by Dr. Ralph Katz of the Westside Ortho-paedic Clinic. Dr. Katz summarized his *275 findings in a report dated September 17, 2014. Dr. Katz examined Mr. Abarca and reviewed his medical records. He opined that as a result of the work accident, Mr. Abarca suffered a cervical strain that should have resolved. Dr. Katz opined that his ongoing complaints were a result of his preexisting cervical spondylosis. Dr. Katz stated that there was no evidence of radi-culopathy. Dr. Katz further stated that upon examination, Mr. Abarca’s pain was out of proportion to the examination, and that he had Waddell findings.[6] Dr. Katz also opined that Mr. Abarca could return to employment in a light duty position, with restrictions that should be temporary.
Dr. Katz’s report also contained the results of psychological testing by Dr. Vandenweghe on June 17 and 18, 2014. That testing reflected significant depression and some behavioral factors associated with poor outcomes for rehabilitation efforts. Dr. Vandenweghe stated that Mr. Abarca was not |spermanently cognitively or emotionally disabled from work, and she recommended focused psychotherapy.
Dr. Dietze’s medical notes stated that he disagreed with the Independent Medical examination. Dr. Dietze agreed that cervical pathology is pre-existing, but did not agree that Mr. Abarca suffered only cervical sprain/strain in the accident. In Dr. Dietze’s opinion, Mr. Abarca suffered aggravation of pre-existing condition, rendering him symptomatic and causing cervical radiculopathy.
On October 11, 2014, Mr. Abarca was involved in an automobile accident. He was treated by Dr. Dietze on December 17, 2014, who opined that the motor vehicle accident temporarily exacerbated symptoms.
ASSIGNMENTS OF ERROR
Mr. Abarca first alleges that the worker’s compensation judge erred in failing to find that he was entitled to temporary total disability. La. R.S. 23:1221 provides that a claimant who seeks such benefits for a work related injury bears the burden of proving, “by clear and convincing evidence unaided by any presumption of disability, that [he] is physically unable to engage in any employment or self-employment.”
The worker’s compensation judge found that Mr. Abarca failed to prove by clear and convincing evidence that he was unable to engage in any employment. She considered the fact that Mr. Abarca was able to work full duty, including overtime, from the date of the accident until he was laid off two and one-half months later, and then he worked for a second employer for approximately seven months before he quit. Thus, Mr. Abarca did return to work after the accident. Furthermore, while Mr. Abarca’s treating physician stated that he was unable to work, the employer’s evaluating doctor, and the court’s independent medical examination doctor both stated that Mr. Abarca could return to work with restrictions.
| sConsidering the record before us, we cannot say that the worker’s compensation judge was manifestly erroneous or clearly wrong in her finding that Mr. Abarca failed to prove entitlement to temporary total benefits by clear and convincing evi *276 dence. We therefore find no error in-, the court’s ruling denying Mr. Abarca’s claim for these benefits.
Mr. Abarca next alleges that the trial judge erred in finding that he was not entitled to cervical surgery as a result of his work related accident, and in finding that he was not entitled to medical treatment for his knee or back pain.
An employee must establish a causal link between the work-related accident and her injury to recover. Summers, supra at 337. A claimant is not necessarily required to establish the exact cause of his disability or injury; however, the claimant must demonstrate by a preponderance of the evidence that the accident had a causal connection with it. Id. “If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof.” Id.
A request for approval for cervical surgery was made to the Medical Director in accordance with La. R.S. 23:1203.1I,[7] The Medical Director denied Mr. Abarca’s request for cervical surgery on October 15, 2014, finding that the documentation submitted “does not support the approval of the requested services in accordance with R.S. 23:1203.1(D) and/or LAC 40;I.2715.L and LAC 40:I.2715.J” and that the “requested care, services, or treatment is recommended hnby the medical treatment schedule, but for a different diagnosis or body part.” (Emphasis in original). Mr. Abarca did not appeal that decision.[8] In addition, while Mr. Abarca argues to this court that the trial court erred in finding that he failed to prove that he was entitled to cervical surgery, he does not argue that the decision of the Medical Director should be overturned.
A worker’s compensation court may overturn the decision of the Medical Director if it is shown by clear and convincing evidence that the decision was not in accordance with the provisions La. R.S. 23:1201. La. R.S. 23:1201.1. The decision of the worker’s compensation court is subject to review under the manifestly erroneous/clearly wrong standard. Vital v. Landmark of Lake Charles, 13-842 (La.App. 3 Cir. 02/12/14), 153 So.3d 1017. Assuming that this issue is properly before this court, we find that Mr. Abarca failed to prove by clear and convincing evidence that the Medical Director was in error.
We also find that the worker’s compensation court was not manifestly erroneous in its determination that Mr. Abarca failed to prove that he was entitled to cervical surgery. The issue presented was not whether Mr. Abarca should undergo cervi *277 cal surgery, but whether the work-related accident caused the need for surgery. Both the employer’s doctor, Dr. Eiserloh, and that court’s independent medical examiner, Dr. Katz, found that Mr. Abarca suffered a neck sprain/strain at the time of the accident, and that his ongoing cervical issues were independently caused by degenerative disc disease. Dr. Dietze, the treating physician at the time of trial, also stated that as a result of the accident, Mr. Abarca suffered neck strain/sprain. However, Dr. Dietze concluded that the work related accident made Mr. Abarca’s pre-existing degenerative disc disease symptomatic. Mr. Abarca did not start treatment with Dr. Dietze until over one and one-half years after the Inaccident. Considering the evidence presented, we find that the worker’s compensation court was not manifestly erroneous in finding that Mr. Abarca failed to prove that he was entitled to cervical surgery as a result of his work related accident.
Next Mr. Abarca contends that the trial court erred in finding that he failed to prove that he was entitled to medical treatment for his knee and for his lower back.
The record reflects that, while Mr. Abarca mentioned knee and/or back pain, he did not receive treatment until almost six months after his accident, and after he had been working at full duty with overtime. Dr. Steiner, who examined Mr. Abar-ca on August 16, 2012, stated in deposition that Mr. Abarca did not complain of injury to any body part other than his neck. The medical records of Mr. Abarca’s treating orthopedist, Dr. Watermeier, reflect that there were some subjective complaints, but no significant treatment given to Mr. Abarca’s knee or lower back. A lumbar MRI conducted in December of 2012 showed degenerative changes, but there was no mention of any injury related to the May 1, 2012 accident. Accordingly, we find no error in the worker’s compensation judge’s ruling that Mr. Abarca failed to prove that he was entitled to treatment for his alleged knee injury or his alleged lower back injury.
Because we find no merit to Mr. Abar-ca’s claims that the trial court erred in finding that he was not entitled to cervical surgery, treatment for an alleged knee injury, or temporary total disability benefits, we also find no merit to Mr. Abarca’s claims that the trial court was arbitrary and capricious in denying same.
Miken has filed an answer for appeal in this court, requesting that the judgment be modified to reflect a finding that none of Mr. Abarca’s symptoms at the time of trial were caused by the May 1, 2012, which it contends is implicit in the judgment rendered.
|12In its disputed claim for compensation and accompanying motion to modify consent judgment, Miken requested that the consent judgment be modified to provide that no further indemnity or medical benefits are due in connection with the cervical injuries suffered, and find that claimant is capable of returning to modified duty work. These are the issues presented to, and considered by, the worker’s compensation judge in rendering her opinion. This court will not expand the decision of the worker’s compensation court and therefore we decline to grant Miken the ruling it seeks.
For the above discussed reasons, the ruling of the worker’s compensation court is affirmed. Costs are assessed equally between the parties.
AFFIRMED

. This claim is not included in the record. Mr. Abarca asserted in brief that this claims alleged "ongoing disability and medical care.”

. The report makes no mention of lower back pain or knee pain.

. Mr. Abarca referred to Dr. Lee as the "company doctor.”

.Contained in Mr. Abarca's personnel records is a report that states that Mr, Abarca requested that he be laid off.

. Mr. Abarca stated he had knee pain on the intake questionnaire. This was not addressed in Dr. Watermeier’s notes.

. Waddell’s signs are a group of physical signs which may indicate non-organic or psychological component to chronic low back pain. They were first described in a 1980 article in Spine, and are named for the article's principal author, Gordon Waddell, M.D., (1943-), a Scottish Orthopedic Surgeon. Historically, they have also been used to detect malingering in patients with back pain. While testing takes less than one minute, it has been described as time-consuming and alternatives have been proposed. (Citations omitted.) Waddell’s Signs, http://wildpedia.org

. La. R.S. 23:1203.11 provides:
After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances,

. As required by Louisiana Administrative Code, 40:I.2715K(1), any party aggrieved by the decision of the Medical Director shall seek judicial review by filing Form LWC-WC-1008 in a workers' compensation district office. See Gilliam v. Brooks Heating & Air Conditioning, 49,161 (La.App. 2 Cir. 07/16/14), 146 So.3d 734.