960 So.2d 1122 (2007)
Charles CHAMPAGNE
v.
PHS INDUSTRIES and CNA Insurance Company.
No. 07-CA-31.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2007.
Jeremiah A. Sprague, Kenneth M. Waguespack, Jr., Falcon Law Firm, Attorneys at Law, Marrero, LA, for Plaintiff/Appellant.
Kevin A. Marks, Randy J. Hoth, Galloway, Johnson, Tompkins Burr & Smith, Attorneys at Law, New Orleans, LA, for Defendant/Appellee.
*1123 Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD and GREG G. GUIDRY.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
Charles Champagne, claimant, was employed by PHS Industries, Inc. as a pipe fitter. On September 20, 2002, Champagne injured his lower back while in the course and scope of his employment. He was repairing a forklift when he lifted the fork from the floor, it was top heavy and slipped and he caught the full weight with his lower back. As a result, Champagne hurt his lower back. He reported the injury to his supervisor, Donald Lashley. He was then treated at the Occupational Medical Center at West Jefferson Medical Center.
An MRI was performed on October 4, 2002, which revealed a bulge at the L4-5 disc level and herniation at the L5-S1 disc level, causing impingement on the S1 nerve root. At the request of CNA Insurance Company, PHS Industries' workers' compensation carrier, Champagne was treated by Dr. Michael Grimm at Jefferson Orthopedic Clinic on October 28, 2002. Dr. Grimm reviewed the MRI results and recommended conservative treatment with physical therapy. Dr. Grimm released Champagne to light duty work with maximum lifting restrictions of 10 pounds. Champagne was treated again by Dr. Grimm on December 13, 2002 with complaints that the physical therapy did not relieve the lower back pain. Dr. Grimm prescribed muscle stimulators. Dr. Grimm again treated Champagne on January 29, 2003 and recommended a TENS unit and epidural steroid injections. He also referred Champagne to a neurosurgeon at the Culicchia Neurological Group.
On February 7, 2003, Champagne saw Dr. Meda Colvin of the Culicchia Neurological Group. He was diagnosed with left L-5 radiculopathy and prescribed Neurontin. Dr. Colvin also recommended that Champagne lose weight and participate in physical therapy and a psychiatric evaluation.
On March 12, 2003, Champagne saw Dr. Robert Steiner. Champagne claims that an adjuster with CNA contacted him and told him to see Dr. Steiner. CNA and PHS Industries note that Champagne saw Dr. Steiner in 1997 for a prior back injury and chose to return to him for this current back injury. Champagne complained to Dr. Steiner of low back pain when he bent forward, pain when he lifted his legs, and pain radiating down both legs. He also complained of tingling and numbness in his left leg. Dr. Steiner diagnosed Champagne with radiculopathy secondary to disc herniation at L5-S1. Dr. Steiner recommended a discectomy, which was performed on April 28, 2003 at East Jefferson General Hospital.
Champagne returned to Dr. Steiner on September 10, 2003 for an exam and Dr. Steiner recommended vocational rehabilitation. A Functional Capacity Evaluation was conducted on November 3 and 5, 2003 at Crescent City Physical Therapy. The evaluation indicated that Champagne could work up to medium duty. A report by Dr. Steiner dated November 3, 2003 stated his work restrictions included no repetitive bending, stooping, twisting, and lifting. Dr. Steiner found that Champagne had reached maximum medical improvement on December 3, 2003. On December 8, 2003, Dr. Steiner released Champagne to light duty work with a 10 pound lifting restriction. Dr. Steiner approved a light duty position for Champagne with PHS, titled Catalogue Assembly Worker.
Champagne returned to work at PHS as a Catalogue Assembly Worker in December 2003. This job required Champagne to sit in a chair and screw nuts on the ends *1124 of U-bolts. Champagne claimed he had to lift up to 35 pounds and bend to pick up parts to put onto the table. However, PHS claims he was not required to bend at all because co-workers placed the U-bolts on the table for Champagne to assemble.
On December 24, 2003, Champagne claims he was involved in a second work related accident. He claims a co-worker, Mike Zeringue, struck him in the side and shoved him into his supervisor, Keith Harrington. Champagne claims he re-injured his lower back as a result of this incident. Champagne reported to Dr. Steiner on January 5, 2004 with complaints of lower back pain and pain in both legs. He was prescribed a lumbosacral corset and Dr. Steiner ordered no work for a week. Champagne allegedly returned to work one week later, but only for a couple of days.
On January 22, 2004, Champagne was examined by Dr. Ralph Katz, an orthopedic doctor. Champagne claimed at trial that Dr. Katz was his choice of an orthopedic surgeon. PHS claims Dr. Katz is his second choice of orthopedic surgeons. Champagne complained to Dr. Katz of low back pain and a burning sensation in his lower left extremity. Dr. Katz recommended an MRI of the lumbar spine and an electromyography and nerve conduction study of the lower left extremity. Dr. Katz found Champagne was disabled from working and recommended epidural steroid injections. On March 31, 2004, Champagne filed a Disputed Claim for Compensation seeking an MRI and EMG test and his choice of an orthopedic physician. Thereafter, an MRI was conducted on May 29, 2004. Dr. Katz reviewed the MRI results on July 22, 2004 and found no evidence of a recurrent disc herniation.
Dr. Steiner reviewed the MRI results on July 8, 2004 and noted Champagne was still at maximum medical improvement and light duty work status because there had been no change in his condition.
Champagne then saw his family physician, Dr. Paul Staab, with complaints of pain down both legs, urinary and bowel incontinence. Dr. Staab also administered Coumadin for a blood clot behind Champagne's knee.
On March 1, 2005, Champagne filed a Supplemental and Amended Claim for Compensation alleging the second work accident on December 24, 2003 had aggravated his medical condition.
Champagne then reported to Dr. Steiner on July 18, 2005 for the bowel and bladder incontinence. He recommended a follow-up MRI, which was conducted on November 15, 2005. On February 2, 2006, Dr. Steiner reviewed the MRI results and found no disc herniation, stenosis or nerve root compromise. Because this MRI was the same as the May 2004 MRI, Dr. Steiner found that Champagne had reached maximum medical improvement and found that the bowel and bladder symptoms were unrelated to the work accident.
On March 23, 2006, Dr. Katz agreed that Champagne had reached maximum medical improvement and also found that the bladder and bowel symptoms were not related to the work accident. Dr. Katz referred Champagne to a urologist for the unrelated incontinence problems.
Trial was held on March 20, 2006. The workers' compensation court issued a Judgment on August 25, 2006 finding: 1) Dr. Robert Steiner was Champagne's choice of physicians as an orthopedic surgeon, and his opinion should be accorded the same weight as any other treating physician, 2) Champagne was determined by his treating physician to not be disabled, and is therefore, not eligible for temporary total disability benefits or permanent total disability benefits, 3) PHS *1125 Industries has established the availability of suitable alternative employment for Champagne without wage loss, therefore, Champagne is not eligible for supplemental earnings benefits, and 4) the treating physicians determined Champagne has reached maximum medical improvement and, therefore, is not entitled to further medical benefits. Champagne now appeals this judgment.

DISCUSSION
On appeal, Champagne argues the trial court erred in finding Dr. Steiner to be his choice of physician as an orthopedic surgeon. Champagne argues that CNA's adjuster, Keri Robillard, informed him he was to be evaluated by Dr. Steiner after the September 20, 2002 accident. Champagne contends that he did not select Dr. Steiner as his choice of physician and at no time did anyone from PHS Industries of CNA Insurance inform him of his right to choose his own treating physician or his right to fill out a form designating a doctor to be his treating physician. Champagne argues he clearly wanted to be treated by another physician, Dr. Ralph Katz, after the second accident, and testified at trial that he wanted Dr. Katz to be his choice of physician in orthopedic surgery.
Champagne also argues that he has been determined to be disabled and is entitled to temporary and permanent total disability benefits. He argues he was still disabled when he saw Dr. Steiner in February 2006, after his second accident, and has been disabled since trial. He also argues he was in pain while attempting to work for PHS Industries and has met the burden required under La. R.S. 23:1221(1)(c) that he is physically unable to engage in any employment due to the amount of pain experienced when working, and is thus entitled to temporary total disability benefits or permanent total disability benefits from April 24, 2004 to date and continuing.
Third, Champagne argues he is entitled to supplemental earnings benefits because his employer has not provided alternative work for him that fits the doctor's restrictions. He claims when he returned to work in December 2003, his task consisted of assembling two pieces of pipe clamps and bolts to be put into another bin. He claims this task required him to pick up 35 pounds and twist and bend to obtain the parts to be placed on the table to be assembled. Champagne argues that the work restrictions provided by Dr. Steiner in November 2003, included no repetitive bending, stooping, twisting and lifting. Champagne argues the work provided by PHS required him to bend and twist approximately two to three hundred times per day. He argues he could not perform the light duty work offered by PHS due to the pain involved in performing the tasks. Therefore, he claims he is entitled to supplemental earnings benefits.
Finally, Champagne argues he has not reached maximum medical improvement and is entitled to medical benefits for further testing that has been recommended by Dr. Katz.
For the reasons which follow, we agree with the workers' compensation court and affirm the August 25, 2006 judgment. First, we find the court did not err in deciding that Dr. Steiner was Champagne's choice of physician. La. R.S. 23:1121(B)(1) provides that the employee shall have the right to select one treating physician in any field or specialty. Champagne claims that his employer's insurance carrier told him to see Dr. Steiner and, thus, Dr. Steiner was not his choice of an orthopedic physician. Champagne had previously seen Dr. Steiner for an unrelated back problem and continued to treat with Dr. Steiner for this work related injury from March 2003 until January 2004. Further, there was no evidence presented *1126 at trial to indicate that Champagne was forced to treat with Dr. Steiner. Champagne has argued that he was not informed of his right to choose a treating physician and he did not sign a form choosing Dr. Steiner as his choice of an orthopedic physician, as required by La. R.S. 23:1121(B)(2)(b). La. R.S. 23:1121(B) provides, in part:
B. (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
(2)(a) If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.
(b) When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee's choice of physician, if the employee has received written notice of his right to select one treating physician in any field or specialty, and then chooses to select the employer's referral as his treating specialist after the initial medical examination as signified by his signature on a choice of physician form. The notice required by this Subparagraph shall be on a choice of physician form promulgated by the director of the office of workers' compensation and shall contain the notice of the employee's rights provided under R.S. 23:1121(B)(1). Such form shall be provided to the employee either in person or by certified mail.
We note that Champagne did not have to sign a choice of physician form that is now required by La. R.S. 23:1121(B)(2)(b). That requirement was added to the statute by an amendment which was effective in 2003 and does not apply to accidents which occurred prior to the amendment date. Champagne's work related accident occurred on September 20, 2002. Therefore, the amendment does not apply and even if Champagne was directed to see Dr. Steiner by his employer, a signed choice of physician form was not required in order for Dr. Steiner to be determined to be his choice of orthopedic physician. Further, there was no evidence presented at trial to indicate that Champagne was forced to continue treatment with Dr. Steiner. In addition, Champagne voluntarily returned to see Dr. Steiner in January 2004 after the alleged second work related accident without being directed to see Dr. Steiner by his employer. Therefore, we find the workers' compensation court correctly found Dr. Steiner to be Champagne's choice of physician in orthopedic surgery.
Next, we agree with the workers' compensation court that Champagne was not disabled and therefore, not entitled to temporary or permanent total disability benefits. La. R.S. 23:1221(1)(a) and (2)(a) provide that an employee may be entitled to a percentage of his wages if any injury produces temporary or permanent total disability of the employee to engage in work, whether the same or similar work the employer was engaged in when injured. Compensation for temporary or permanent total disability shall not be awarded if the employee is engaged in employment regardless of the nature, including employment while working in any pain. La. R.S. 23:1221(1)(b) and (2)(b). Further, when the employee is not engaged *1127 in employment, compensation for temporary or permanent total disability shall be awarded only if the employee proves by clear and convincing evidence that he is physically unable to engage in any employment, regardless of the nature of the employment, including working in any pain. La. R.S. 23:1221(1)(c) and (2)(c).
Champagne had been released to light duty work and found to have reached maximum medical improvement by both Dr. Steiner and Dr. Katz. No treating physician found Champagne to be disabled and unable to return to work. Light duty work was offered and he returned to work for a while, but voluntarily chose to stop working, claiming he was in pain. We find Champagne has failed to prove he is physically unable to engage in employment. Therefore, we find the workers' compensation court correctly found Champagne was not disabled and therefore not entitled to temporary or permanent total disability benefits.
Third, we agree that Champagne is not entitled to supplemental earnings benefits. La. R.S. 23:1221(3)(a) states that an employee may be entitled to supplemental earnings benefits for an injury resulting in his inability to earn wages equal to 90% or more of the wages he earned at the time of the injury. PHS Industries provided light duty work for Champagne, in accordance with his physician's recommendations. PHS provided Champagne with work as a Catalog Assembly Worker, which only required him to sit at a table and screw in nuts to the end of U-bolts. The wages for this position were the same as the wages Champagne was making before the accident. Dr. Steiner had reviewed the job description for this position and approved it as light duty work for Champagne. Champagne voluntarily chose to stop the light duty work offered by PHS. Since his employer offered a position to Champagne in accordance with his physician's requirements and earning the same wages as before the injury, we find Champagne failed to prove he was entitled to supplemental earnings benefits. Thus, we find the workers' compensation court correctly held Champagne was not entitled to supplemental earnings benefits.
Finally, we agree with the workers' compensation court that Champagne had reached maximum medical improvement and was not entitled to further medical benefits. Dr. Steiner found in February 2006 that Champagne had reached maximum medical improvement. Dr. Katz agreed with that finding in March 2006. The only referral by Dr. Katz for further treatment was to a urologist for treatment of bowel and bladder problems found to be unrelated to the work related accident.
Accordingly, we affirm the August 25, 2006 judgment of the workers' compensation court.
AFFIRMED.