GRAVOIS, J.
h This is a workers’ compensation suit. Claimant Lisa Tassin appeals a judgment of the Office of Workers’ Compensation rendered on September 15, 2016, which found that she was not entitled to temporary total disability benefits (“TTDs”) and that she had failed to carry her burden of proof that she was entitled to supplemental earnings benefits (“SEBs”).[1] On appeal, Ms. Tassin argues that the trial court was manifestly erroneous in finding that she was capable of sedentary employment and thus ineligible for TTDs, and that she failed to carry her burden of proof that she is entitled to SEBs.[2] After thorough review of the record and the applicable law, we affirm the judgment under review.
FACTS AND PROCEDURAL HISTORY
Claimant Lisa Tassin, a registered nurse, was working as an operating room nurse at Touro Infirmary (“Touro”) when she was injured in the course and scope of her employment while moving an operating room table on October 28, 2010. Ms. Tassin was 47 years old at the time. The facts of her accident, including specifically *215 that she was injured as a result thereof, are not disputed. The nature and extent of her injuries are disputed. The record reflects that while Ms. Tassin was attempting to move the table, she pulled on a part of the table that came loose, causing her to fall backwards. She landed on her coccyx (tailbone), resulting in injuries to her lower back. Prior to this work-related accident, Ms. Tassin had been involved in two motor vehicle accidents in 2009 and 2010 that caused cervical disc injuries resulting in chronic neck pain. At the time of her hospital accident, Ms. Tassin was still under treatment for depression, anxiety, migraines, and neck pain as a result of those earlier motor vehicle accidents.
12InitiaIly, Touro placed Ms. Tassin on light duty work in the medical records department, but she was unable to perform those duties due to pain. She was then placed on a “no-work” restriction and began receiving weekly indemnity benefits (TTDs), medical treatment, and prescription medicine coverage paid by Touro through its third-party administrator, HSLI.
Ms. Tassin was initially treated by Dr. Andrew Todd, an orthopedist, and Dr. Rand Voorhies, a neurologist. She began treating with Dr. William Knight, a physical medicine and rehabilitation specialist, assigned by HSLI, in 2012. At the time of trial, she continued to be under Dr. Knight’s care. Through the time of trial in 2016, Ms. Tassin was evaluated by numerous doctors in several different medical fields. Since her October 28, 2010 work accident, Ms. Tassin has been seen by three neurosurgeons (Drs. Rand Voorhies, James Tran, and Robert Applebaum). She was also seen by two orthopedic surgeons (Drs. Andrew Todd and Chad Millet). She was also evaluated by Dr. Karen Orten-berg, also a specialist in physical medicine and rehabilitation, who performed an independent medical examination (“IME”) for the Office of Workers’ Compensation in 2014. She also saw a pain management physician in 2012, Dr. Joseph Crapanzano, for a second medical opinion, who referred her for treatment to Dr. Eric Lonseth, also a pain management specialist, who evaluated Ms. Tassin in 2013 and performed one facet joint injection in 2016, Ms. Tassin was also evaluated by two psychologists, Drs; Kevin Greve and Aaron Wolfson, and one psychiatrist, Dr. Kenneth Sumner, who treated Ms. Tassin for anxiety and depression. Additionally, in 2016, Ms. Tas-sin developed a neurogenic bladder condition that was accepted as part of her workers’ compensation case; she underwent successful surgery to implant a bladder stimulator. Ms. Tassin also treated with neurologist Dr. Morteza Shamsnia, who treated her prior to the workers’ compensation claim for migraines.
LMs. Tassin received several diagnoses by the doctors who evaluated her, including lumbar radiculopathy and, possibly some nerve root impingement caused by bulging discs in her lower back, and facet joint pain and sacroiliac joint dysfunction. All of the doctors agreed that Ms. Tassin is a non-surgical case. The doctors who were deposed for this case testified that they found Ms. Tassin to be cooperative and that her complaints of pain were genuine, but opinions' differed as to the exact genesis of her back pain. No doctor found that Ms. Tassin was malingering or magnifying her symptoms. Dr. Ortenberg opined that Ms. Tassin developed a chronic pain condition, caused in part by her previous neck injuries from the motor vehicle accidents in 2009 and 2010, that has made it harder for her to recover from her work accident. Dr. Greve’s psychological assessment, reviewed by Dr. Ortenberg, recommended that Ms. Tassin receive cognitive behavioral therapy in order to alleviate her “obsession” with her pain. Dr. Knight and *216 Dr. Lonseth both testified that Ms. Tas-sin’s particular subjective complaints of pain in her lower back have been corroborated by objective diagnostic tests, including a myelogram and a SPECT scan performed in 2013.
At the time of trial, Ms. Tassin was on a “complicated” prescription medicine regime that included multiple prescriptions for depression and anxiety, muscle spasms, long-acting time release pain medication, and short-acting pain medication for break-through pain. However, her treating physician, Dr. Knight, as well as Drs. Cra-panzano and Lonseth, specifically stated that Ms. Tassin did not exhibit drug-seeking behavior. Dr. Ortenberg, on the other hand, felt that Ms. Tassin was taking some duplicative medications, particularly benzo-diazepines, and that she should wean off of most of them.[3]
|4Ms. Tassin underwent a functional capacity examination (“FCE”) in January of 2015 in order to assess her physical capabilities. She remained on a no-work status while she sought authorization from HSLI for facet joint injections and a sacroiliac injection. The facet joint injections, which were recommended by several doctors as early as 2013, were eventually approved in 2016. Dr. Lonseth performed a facet joint injection in January of 2016, and also at the same time injected the sacroiliac joint with, some anesthetic, but stated that it was not a “true” sacroiliac joint injection because that procedure had not been approved by the insurance carrier.[4]
The results of the 2015 FCE, performed by Dr. Richard Bunch- and entered into evidence, found that Ms. Tassin was capable of light to light-medium duty work with certain restrictions, though .she had not been released to work by her treating physician, Dr. Knight. As a result of the 2015 FCE, along with the reports of the doctors who had evaluated Ms. Tassin and approved various job descriptions,[5] the claims adjustor for. HSLI, Ms. Tami Bartlett, reduced Ms. Tassin’s TTD indemnity benefits to SEBs effective on April 1, 2015.
On June 10, 2015, Ms. Tassin filed a Disputed Claim for Compensation, arguing that Touro was arbitrary and capricious in reducing her indemnity benefits from TTDs to SEBs, and asking that TTDs be reinstated and that she be awarded penalties and attorneys’ fees.[6] Ms. Tassin additionally contended that she did not have the skills and prerequisites for several of the jobs identified by Jeannie Lillis, a vocational rehabilitation specialist assigned to her claim. Touro answered the claim, contending that Ms., Tassin was not entitled to weekly indemnity benefits any long<er because she was no longer disabled from working and earning wages Lequal to her wages at the time of her injury. In the alternative, Touro disputed the amount of indemnity benefits to which Ms. Tassin was entitled. ’
The matter went to trial on May 16 and June 27, 2016. Ms. Tassin testified, as well as .Ms. Lillis, the vocational rehabilitation specialist who became involved in Ms, Tas- *217 sin’s case in 2013 and who identified the light to medium duty jobs that Ms. Tassin could allegedly perform per the results of the 2015 FCE. Ms. Tassin’s medical records and pharmacy records were accepted into evidence. The depositions of the following doctors were entered into evidence: Dr. Eric Lonseth (interventional pain management); Dr. William Knight (physical medicine and claimant’s treating physician); Dr. Karen Ortenberg (physical medicine and independent medical examination); and Dr. Joseph Crapanzano (second medical opinion in physical medicine).
The workers’ compensation judge found, as indicated in her written reasons for judgment, that Ms. Tassin was not entitled to TTDs because she had not borne her burden of proof that she was not capable of any employment. The court next found that Ms. Tassin had also failed to show that she could not earn ninety percent or more of her pre-injury wages and thus was not entitled to SEBs, finding that the reason Ms. Tassin could not work at similar jobs in the health care field was because she had let her nursing license lapse, not because of any disability. The trial court denied penalties and attorneys’ fees, finding that HSLI was not arbitrary and capricious in reducing Ms. Tassin’s benefits because the adjustor relied upon the FCE, the reports of Dr. Crapanzano and Dr. Ortenberg, and Dr. Crapanzano’s approval of several jobs. This timely appeal followed.
LAW AND ANALYSIS

Standard of review

In a workers’ compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Fleming v. Garda Sec., 10-1021 (La.App. 5 Cir. 5/10/11), 65 So.3d 763, citing Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 737. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Seal v. Gaylord Container Corp., 97-0688 (La. 12/02/97), 704 So.2d 1161, 1164 (citations omitted).

Entitlement to temporary total disability benefits

Under La. R.S. 23:1221(1)(c), to establish entitlement to temporary total disability benefits, & claimant must prove by clear and convincing evidence that she is physically unable to engage in any employment or self-employment due to her injury, regardless of the nature of the employment, including working in any pain. Champagne v. PHS Industries, 07-31 (La. App. 5 Cir. 5/29/07), 960 So.2d 1122. A claimant must present objective medical evidence to establish by clear and convincing evidence that she is unable to engage in any type of employment. Fassitt v. Jefferson Parish Hosp. Serv., 07-695 (La.App. 5 Cir. 12/27/07), 974 So.2d 757, 760.
In brief, Ms. Tassin argues that the trial court erred in finding her capable of sedentary employment because the only doctors who said she could engage in sedentary work were Dr. Ortenberg, whom she saw only once on July 15, 2014 when she performed the IME for the Office of Workers’ Compensation, and Dr. Crapan-zano, the employer’s choice of doctor, whom she saw only once in 2012. She argues that Dr. Ortenberg did not review or comment on her FCE, and that she did not have all of Ms. Tassin’s medical records, particularly the reports of Dr. Lon-seth. She also argues that Dr. Crapanzano, likewise, did not have all of her medical records, and approved jobs for her to perform based on the 2015 FCE despite.not knowing her current condition. She argues *218 that not enough weight was given to the opinion of her treating physician, Dr. Knight, who maintained that Ms. |7Tassin could not yet return to work because she could not sit or stand for longer than thirty minutes without pain, and thus did not approve the jobs submitted to him in 2015 by Ms. Lillis.
The general rule is that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. However, the treating physician’s testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Williams v. Wal-Mart Stores, Inc. # 912, 00-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134, 1135.
Dr. Knight testified in his deposition that Ms. Tassin could not yet return to work because she could not sit or stand for more than 30 minutes at a time. However, he admitted that this was information self-reported by Ms. Tassin and that he did not have any independent knowledge of her capabilities other than what she told him. Ms. Tassin’s self-reported physical inabilities were rebutted by the results of the FCE, the report of which details Ms. Tas-sin’s physical capabilities as determined by the examination and showed that she could engage in light to light-medium work.[7] Ms. Tassin’s position was also rebutted by observation of Ms. Tassin at Dr. Knight’s deposition, wherein it was noted that she had apparently sat for over an hour and a half with no reported discomfort and little visible posture changes. Dr. Ortenberg also noted, in the notes of her IME of 2014, that Ms. Tassin drove 35 minutes to her office with no reported issues and also appeared to sit and stand comfortably for periods of time exceeding thirty minutes. Dr. Ortenberg also noted that Ms. Tassin reported that she drove, did her own cooking, cleaning, and grocery shopping (albeit with breaks and with some limits), and took care of her husband, who has a chronic health condition. Dr. Ortenberg | ^specifically opined that Ms. Tassin was not a malingerer, but possibly due to her chronic pain condition and tendency to so-matization,[8] was a good deal more functional than she gave herself credit for.
Thus, upon review, we find no manifest error in the trial judge’s conclusion that Ms. Tassin did not bear her burden of proof that she is unable to engage in any employment, and thus was not entitled to TTDs. The results of the FCE, as well as observational evidence as noted above, specifically contradict Ms. Tassin’s self-reported inability to sit or stand comfortably for more than thirty minutes, which was the basis for Dr. Knight’s conclusion that Ms. Tassin could not return to work at that time. The trial judge was not clearly wrong in according less weight to Dr. Knight’s opinion and in giving more weight to the opinions of Dr. Ortenberg and to the detailed and thorough results of *219 the FCE. This assignment of error is without merit.

Entitlement to supplemental earnings benefíts

Ms. Tassin next argues that the trial court erred in finding that she was not entitled to supplemental earnings benefits. The purpose of supplemental earnings benefits is to compensate an injured employee for the wage earning capacity she has lost as a result of her accident. Summers v. Ritz-Carlton New Orleans, 14-800 (La.App. 5 Cir. 5/28/15), 171 So.3d 329, 345 (internal citations omitted). If an employee sustains a work-related injury that results in an inability to earn ninety percent or more of her average pre-injury wage, then the employee is entitled to receive supplemental earnings benefits. La. R.S. 23:1221(3)(a)(i).
Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury caused her inability to earn ninety percent or more of |flher average pre-injury wage. Richard v. HSLI & Touro Infirmary, 12-873 (La.App. 5 Cir. 5/23/13), 119 So.3d 617, 621, citing Clay v. Our Lady of Lourdes Regional Medical Center, Inc., 11-1797 (La. 5/8/12), 93 So.3d 536, 539. The issue in determining eligibility for SEBs is whether the claimant has proved that she is unable to earn wages equal to ninety percent or more of her pre-injury wage, whether or not in the same or similar job in which the claimant was previously employed. Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793 (La. 1/9/11), 56 So.3d 170.
Once an employee meets this burden, the burden shifts to the employer who, in order to defeat the employee’s claim for supplemental earnings benefits, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job, and that the job was offered to the employee or was available to the employee in her or the employer’s community or reasonable geographic region. La. R.S. 23:1221(8)(c)(i). If the employer meets this büfden, then the employee must establish by clear and convincing evidence that she is unable to engage in any employment. La. R.S. 23:1221(3)(c)(ii); Summers v. Ritz-Carlton New Orleans, supra.
Ms. Tassin argues in brief that the evidence is clear that she cannot return to her former job as an operating room nurse or floor nurse, because such work is at least medium duty and is more than she was found capable of in the FCE. Thus, she argues, she has met her burden of proof that she is entitled to SEBs. However, the criteria for SEBs does not require that one be able to return to the same job or position. It merely requires a showing that the claimant cannot earn at least ninety percent or more of her pre-injury wage at any job. Poissenot, supra.
On review of the record before us, we find no manifest error in the trial court’s conclusion that Ms. Tassin failed to show that she could not earn ninety percent or more of her pre-incident wage due to her disability, and thus was not 11flentitled to SEBs. The record shows, instead, that Ms. Tassin had allowed her nursing license to expire, which caused her to decline to apply for several nursing jobs that Ms. Lillis identified as being appropriate for her physical capabilities, education, and experience, and which fell within the required wage level. Ms. Tassin testified that she felt it was fraudulent for her to apply for a position that required an active nursing license when she knew hers had lapsed. She also testified that she was advised she could not hold an active nursing license given the amount of pain medicine she was required to take, though she *220 produced no corroboration of -this statement. A letter from the state nursing licensing board that Ms. Tassin introduced made no mention of her disability as the reason, for her expired license or an inability to renew it.- Additionally, Ms. Tassin testified that she did renew her radiologic technician’s license in the same time frame, because she was advised that had she let it lapse, she would have had to retake the board examinations. The nursing board, however, would have only required a doctor’s letter and the completion of any required continuing education units before allowing reinstatement of her nursing license. Ms. Tassin’s ability to renew her radiologic tech license while also “disabled” and on narcotic pain medicine casts doubt on her unsubstantiated assertions that she could not maintain or renew her nursing license. We accordingly find no manifest error in'the trial court’s conclusion that Ms. Tassin failed to bear her burden of proof in this regard. This assignment of error is" without merit.
CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers’ Compensation under review is affirmed.
AFFIRMED

. The judgment also found that Ms. Tassin failed to carry her burden of proof that her employer failed to authorize certain prescription medications, though she does not assign this as an error in her appeal.

. The judgment does not address Ms. Tassin’s medical benefits, only her weekly indemnity benefits.

. This information is presented merely for a more complete view of the case; however, as noted earlier, Ms. Tassin's medical expenses and benefits are not at issue in this appeal.

. Dr. Lonseth stated in his deposition that he did not bill for the partial sacroiliac injection.

. Dr. Crapanzano approved a few jobs submitted to him in 2015, with the qualification that he had last seen Ms. Tassin in 2012 and would defer to the more recent evaluations of her condition.

.In an Amended Disputed Claim for Compensation filed on November 18, 2015, Ms. Tassin additionally asserted that certain prescriptions recommended by Dr. Knight were not authorized by Touro/HSLI.

. The judgment found that Ms. Tassin could . engage in sedentary employment. In the scheme of workers’ compensation, sedentary work is less demanding than light duty work.

. In her deposition, Dr. Ortenberg noted that Dr. Greve’s psychological evaluation of Ms. Tassin found "evidence of significant somati-zation,” which she explained is a tendency to use physical symptoms as a means of coping and communicating about one’s emotional life, and to experience exacerbations and physical symptoms in response to psychosocial distress. She further explained that soma-tization is understood to reflect a long-standing personality and emotional coping style, and is not caused by injuries. Dr. Greve and Dr. Knight both agreed that it would be beneficial to Ms. Tassin's depression and physical symptoms for her to return to work and be productive.