SUSAN M. CHEHARDY, Chief Judge.
12This is a workers’ compensation case in which the Office of Workers’ Compensation (“OWC”) judge ruled in favor of the claimant. The employer appeals. We affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
On December 19, 2011, Cruz Daniel Guevara filed a Disputed Claim for Compensation against his former employer, Brand Services, L.L.C. (“Brand”).[1] Guevara alleged that while building scaffolding on August 18, 2011, he fainted due to becoming overheated, which caused him to fall and injure his right knee. He alleged that his employer failed to authorize medical treatment and failed to pay indemnity benefits.
The case was tried over the course of four separate days between June 27 and August 7, 2012. Guevara testified at trial as follows: On the day of the accident the weather was hot, about 100 degrees. He was on the ground floor, carrying scaffolding materials (seven-foot and five-foot bars) and passing them to his coworkers. They needed to finish the scaffold as soon as possible, so they skipped the regular break time and continued building. They finished the scaffold about 9:45 a.m. The rest of the crew then took their breaks. Guevara said he |sstayed behind to clean the material left on the ground. It was about 10:00 a.m. He remembered carrying two seven-foot bars and that’s when he lost consciousness. He did not remember how he fell, but said he may have twisted his foot and fallen on his leg, and that’s how he twisted his knee. When asked whether he knew why he lost consciousness, he responded that it might have been because of the heat.
The site supervisor, Joseph Cangelosi, testified he saw Guevara sitting on an upturned bucket after break time had ended. Cangelosi went to find Guevara’s foreman to speak to Guevara. When they arrived back at the spot where Guevara had been sitting, they saw he had fallen off the bucket and was holding his side. Guevara was talking, but they could not understand him. Neither Cangelosi nor the foreman could speak Spanish. They lifted Guevara up and brought him to the office, where he was taken away in an ambulance.
Guevara was initially treated at Gulf South Occupational Medicine at 11:35 a.m. on the day of the accident. The history obtained from Guevara, through a translator, was that he was having left flank pain for two hours with increased intensity, with pain severe enough to make him unable to bear weight or walk. He had a history of three abdominal surgeries and *628 kidney stones. Dr. James Bellone diagnosed hypoténsion, left flank pain secondary to history of nephrolithiasis, and abdominal pain to lower abdomen.
Guevara was then transferred to Baton Rouge General Hospital for further care. A CT scan revealed a stone in the left renal pelvis, but not obstructing, and dilated loops of bowel consistent with possible small bowl obstruction. While he was in the hospital, Dr. Sidney Ross performed a surgical consultation and recommended a trial of clear liquid for left renal stone, symptomatic, and partial small bowel obstruction.
|4Guevara was discharged from Baton Rouge General Hospital on August 21, 2011 with a diagnosis of a partial small bowel obstruction-resolved, non-obstructive nephrolithiasis, acute kidney injury, and back pain. The discharge summary states: “Upon admittance, the patient was also found to have acute kidney injury ... suspected to be mostly related to intravas-cular volume depletion due to poor hydration and loss of perspiration as patient had been working outside in the heat.” The discharge diagnosis by the treating physician does not mention that Guevara made any knee complaints during his admission at the hospital.
With respect to the dehydration, defense counsel cross-examined Guevara about the availability of water and Gatorade on the job site that day. Guevara said both water and Gatorade were freely available, and he drank both that morning.
Guevara testified he was not aware of the knee injury while in the hospital, because he was lying down the whole time. He said he did not get out of bed even to go to the bathroom. He did not notice a problem until he was being discharged from the hospital, and found he had problems walking. He asked for a wheelchair, but ended up walking out by holding on to his nephews, who had come to drive him home. He went to stay with his cousins in LaPlace, where he discovered the next morning that his right knee was very swollen and painful.
On September 6, 2011, Guevara sought medical treatment from Dr. José Veras Pola at Sunnyside Family Facility. The medical records indicate that Guevara complained of bilateral knee pain, soreness, swelling, and inability to stand longer than 20 minutes at a time. He reported a history of a stroke two years before, that since then he had been having pain all over the body, and that his knees had been worsening in the past few months. The report makes no reference to the work-related accident of August 18, 2011.
lsOn October 12, 2011, he was evaluated by Dr. Olga Perez at Daughters of Charity Medical Services. Guevara related a history of hypertension, stroke and renal failure, as well as knee pain for two years. He said he had been prescribed Lortab, but it gave him a “bad' reaction.” The physical examination revealed abnormality of the left knee. Dr. Perez diagnosed hypertension, renal disorder, and stroke syndrome.
Guevara returned to Dr. Perez on November 8, 2011. At that time, he complained of bilateral knee pain. Examination revealed swelling in the right knee. Dr. Perez diagnosed knee joint pain and increased blood pressure. Dr. Perez recommended an MRI of the right knee and prescribed pain medication.
On November 21, 2011 Guevara was evaluated by Dr. F. Alan Johnston, an orthopedic surgeon. He related a history of sustaining a stroke and falling, resulting in a four-day admission at Baton Rouge General Hospital, and a history of hypertension and kidney problems. He denied any prior injuries to his knees. Dr. John *629 ston diagnosed right knee strain and contusion, ruling out internal derangement. Dr. Johnston recommended an MRI of the right knee, administered an injection, recommended physical therapy and pain medication. The doctor also restricted Guevara from returning to work on scaffolds.
Dr. Johnston re-examined Guevara on January 4, 2012, after Guevara had undergone an MRI. During the examination, Guevara complained of right knee pain, but said that the previous injection offered some relief, and that he had undergone physical therapy. A review of the MRI revealed a frayed wisp of the remnant of the medial meniscus; loss of articular cartilage to the mediofemoral condyle and mediotibial plateau with accompanying os-teochondral defect; loss of cartilage to the patella; injury to the ACL as well as the MCL; knee effusion; and | ^popliteal cysts. Dr. Johnston stated that if no relief was obtained from the second injection, that Guevara would be a candidate for arthros-copy.
The OWC court took the matter under advisement and rendered judgment on November 20, 2012. The court found that Guevara was injured by accident during the course and scope of his employment on August 18, 2011; that he sustained dehydration, a back injury, and right knee injury; that he is entitled to temporary total disability benefits from August 18, 2011 through the present and continuing; and that Brand is liable for all medical expenses and transportation expenses for the dehydration, back injury, and right knee injury caused by the accident of August 18, 2011. Brand appeals.
ARGUMENTS
On appeal Brand makes the following assignments of error:
(1) The trial court erred in finding that Guevara was involved in a work-related accident on August 18, 2011.
Brand argues that based upon Guevara’s inconsistent testimony, the medical records from his healthcare providers, and the testimony of various co-workers, the trial court’s finding that Guevara was involved in a compensable work-related accident resulting in dehydration, back, and knee injuries was unreasonable; therefore, it was manifestly erroneous or clearly wrong, and should be reversed. Brand asserts Guevara provided inconsistent testimony as to whether he took a break on August 18, 2011, as well as what time he arrived and actually began work.
Further, Brand cites the testimony of supervisor Joe Cangelosi, who testified that he did not -witness Guevara performing any work that day and that his tools had not been unpacked and still remained in the back of the truck. Based on Cange-losi’s testimony, Brand asserts, Guevara could have performed at most 4517minutes of labor prior to his 15 minute break, and as he didn’t have possession of his tools, it is questionable that he performed any work that morning.
Brand further contends that Guevara’s medical history of prior kidney disease and his lack of complaints about being “overheated” establish the kidney episode was related to his pre-existing disease and was not triggered by any work-related incident. His discharge summary from Baton Rouge General listed a kidney stone and a small bowel obstruction, which Brand contends are not related to any work activity performed on August 18, 2011 and, therefore, is not a compensable injury. Furthermore, the emergency room physician’s notes documented that the claimant fell as a result of flank pain, so Brand argues there is no evidence to support that he fell *630 as a result of being “overheated” while performing work-related activities.
A review of the testimony and evidence shows that the discrepancies upon which Brand relies to deny Guevara’s claim are minor and do not cast serious doubt upon Guevara’s version of the event. Guevara has claimed that he sustained his injury while picking up scaffolding materials which he stated took place at the scaffolding site, between 9:30 a.m. and 10:00 a.m. Joe Cangelosi testified that he and the foreman, Brandon Olah, helped Guevara get up from the ground, and brought him to the truck and transported him to Pax-ton Carlisle, the “safety man.” Cangelosi furthered testified that he saw Guevara after the 9:00 break sitting on a bucket. Remembering that the 9:00 a.m. break is fifteen minutes long and that Cangelosi saw Guevara right after that break sitting on a bucket, and that Cangelosi had to go find the foreman, a reasonable man could surmise, given the elapsed time after the 9:00 a.m. break, that the accident could have occurred between 9:30 a.m. and 10:00 a.m., as stated by Guevara. Guevara contends that |shis inability to remember the exact time the incident occurred is not a discrepancy that casts doubt on his version of events.
(2) The trial court erred in finding that Guevara sustained knee injury as a result of a work-related accident.
Brand asserts Guevara’s testimony is self-contradictory. He testified at trial that he first noticed knee pain on the day he left the hospital, and discovered the knee was swollen the day after leaving the hospital. In contrast, in his deposition he said he advised the hospital physician of the difficulties with his knee and was given pain medication for it. The hospital notes do not mention any knee problem nor any complaint of knee pain by Guevara. The notes also indicate that his walking was limited and his mobility slightly impaired.
Brand points out that Guevara first sought medical help for his knee more than two weeks after the accident, when he saw Dr. José Veras Pola on September 6, 2011. The records indicate Guevara complained of bilateral knee pain, soreness, swelling, and inability to stand for long. The notes do not mention any work-related accident; rather, the notes state Guevara reported a history of a stroke two years before and having pain all over his body since then, with the knees worsening in the past few months.
Brand points out further that Dr. Olga Perez stated that Guevara gave a history of hypertension, stroke and renal failure, as well as knee pain for two years. Dr. Perez diagnosed hypertension, renal disorder, and stroke syndrome. She noted on return visits that Guevara complained of increasing knee pain and she recommended he undergo an MRI. Her notes do not mention any work-related accident. Brand mentions further that Joe Cangelo-si, the job supervisor, testified he noticed that Guevara walked with a limp when he appeared for work on August 18, 2011.
|9In response, Guevara notes he testified that before the accident he was working, without any limitations from his knee. Further, Joe Cangelosi admitted that Guevara was fit to work on the day of the incident, without any limitations.
Guevara also points out, regarding mention of past complaints of knee pain, that he never made any prior claims for the knee, nor was there any mention of knee pain or knee complaints in the employment personnel file of his prior employer, Scaffolding Rentals. Guevara asserts that even if he suffered from occasional knee pain over the years, the fact remains that the precipitating incident for his current symptoms was the fall of August 18, 2011.

*631
(3)In finding that Guevara sustained a back injury as a result of a work-related accident.

Brand asserts that Guevara did not testify at the trial that he suffered from a back injury as a result of the alleged fall on August 18, 2011. Furthermore, the medical records from Dr. José Veras Pola, Dr. Olga Perez, and Dr. F. Alan Johnston make no references to back pain. These physicians did not diagnose Guevara with a back injury, nor did they recommend any treatment for his back.
In response, Guevara contends it was within the judge’s wide and sound discretion after hearing the testimony to find that a back injury did occur. Alternatively, assuming that Guevara did not suffer a back injury, Guevara contends the consequences for Brand still remain the same, because Brand failed to reasonably controvert Guevara’s claim.
LAW AND ANALYSIS
In a workers’ compensation case, the employee bears the burden of proving that an accident occurred, that it occurred in the course and scope of his employment, that the accident caused his injury, and that the injury caused his | indisability. Gray v. H.B. Zachary Const. Co., 01-276, p. 6 (La.App. 5 Cir. 9/25/01), 798 So.2d 271, 274, writ denied, 2001-2847 (La.1/4/02), 805 So.2d 207.
The standard of review is whether the workers’ compensation judge was manifestly erroneous or clearly wrong in factual findings. Id. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error, even in a finding based upon a credibility determination. Id.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id., 798 So.2d at 275.
“As a threshold requirement, a claimant in a workers’ compensation action must prove ‘personal injury by accident arising out of and in the course of his employment.’ ” Bourgeois v. Seabright Ins. Co., 12-834, p. 4 (La.App. 5 Cir. 4/10/13), 115 So.3d 50, 52.
“ ‘Accident’ means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive deterioration.” La. R.S. 23:1021(1). The claimant has the burden of establishing an accident by a ^preponderance of the evidence. Shaw v. Arc of St. Charles, 00-1193, p. 4 (La.App. 5 Cir. 11/28/00), 776 So.2d 542, 545.
A worker’s testimony alone may be sufficient to discharge his burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the accident; and (2) the worker’s testimony is corroborated by the circumstances follow *632 ing the alleged incident. Bourgeois, 12-834 at p. 5, 115 So.3d at 53.
An employee in a worker’s compensation action has the burden of establishing a causal link between the work-related accident and the subsequent disabling condition. Miller v. Roger Miller Sand, Inc., 94-1151, p. 6 (La.11/30/94), 646 So.2d 330, 334.
There is a rebuttable presumption that a claimant’s disability is a result of his employment accident. Doucet v. Baker Hughes Prod. Tools, 93-3087 (La.03/11/94), 635 So.2d 166, 168.
A plaintiff-employee’s disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition.
Hammond v. Fid. & Cas. Co. of New York, 419 So.2d 829, 831 (La.1982). This presumption is not conclusive; rather, it compels the defendant to rebut it with sufficient contrary evidence. Id.
The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee’s disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident.
Hammond, 419 So.2d at 832.
The statute on temporary total disability provides, “[CJompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment....” La. R.S. 23:1221(1)(C).
Here, the evidence established that the claimant, Guevara, was working on the morning of the alleged accident; he suffered an episode of faintness that caused him to fall off the bucket on which he was sitting; he was taken to a hospital and spent several days there, being treated for dehydration and kidney problems; and he did not notice his knee injury until he was being discharged from the hospital.
Guevara had experienced soreness in both knees previously, but it was minimal and was alleviated with Tylenol. This knee injury, however, is much more painful, has continued to be symptomatic, and his treating orthopedist has said he cannot return to work.
Guevara had pre-existing kidney disease. He has apparently recovered from the dehydration and kidney problems he experienced on August 18, 2011.
Guevara is entitled to the rebuttable presumption that his disability resulted from the work accident. In particular, testimony from Guevara, as well as his cousin, Xiomara Lujan, established that before the accident Guevara was in good health and capable of performing the essential functions of his employment with Brand. There were no employment records of any claims made by Guevara at any point in his employment history, other than to make a reference to the doctor when taking the medical history. It is clear that Guevara began having symptoms of a |1sdisabling knee condition as soon as he was able to orient himself after the work accident of August 18, 2011. A *633 review of all medical records and employment records indicate that the disabling condition manifested itself for the first time after the fall on August 18, 2011.
Reviewing the evidence in light of the law, we find the trial court did not err in finding the knee injury was related to Guevara’s on-the-job accident that day. The Office of Workers’ Compensation judge believed Guevara’s testimony that he did not notice the knee injury until his discharge from Baton Rouge General because he was lying in the bed during his entire stay. As a credibility determination, we do not find the court was clearly wrong in finding Guevara entitled to benefits for the knee injury.
As to the back pain, however, we find the Office of Workers’ Compensation judge was clearly wrong in awarding benefits for back injury. There is no evidence of spinal involvement, and none of the physicians treated Guevara for back pain, or made recommendations for future treatment for back problems. The judge erred in finding that claimant sustained a back injury on August 18, 2011.
DECREE
For the foregoing reasons, we affirm the judgment with respect to the claim for knee injury, but we reverse with respect to the claim for back injury. The parties are cast with their own costs for this appeal.

AFFIRMED IN PART AND REVERSED IN PART.

. On the Disputed Claim form that initiated these proceedings, Guevara gave the employer’s name as Brand Energy & Infrastructure Services, Inc. In response to the claim, however, the employer appears under the name Brand Services, L.L.C.