WINDHORST, J.
Appellant/claimant, Reginald Billiot, appeals the trial court's September 10, 2018 judgment in favor of appellee/employer, Pala Group, LLC ("Pala"), finding that claimant failed to meet his burden of showing that he sustained a work-related accident or injury and dismissing claimant's case with prejudice. For the following reasons, we affirm.
PROCEDURAL HISTORY
Claimant was employed by Pala as a welder. In early November 2016, claimant alleged that he injured his back while pulling pontoon and deck legs by hand on Tank 308. Claimant filed a Disputed Claim for Compensation on February 17, 2017. After a trial on the merits, the workers' compensation court rendered judgment in favor of the employer, Pala, dismissing claimant's claims with prejudice. In written reasons, the workers' compensation court found the following:
* * *
All of the witnesses testified that the job at Pala was hard work. However, unfortunately, no one could corroborate Claimant's attestation that he had a work accident. Claimant's accident was not witnessed; no one corroborated his account of an accident or complaints of *954 pain as a result of a work accident. All of the witnesses testified about Pala's policy with regard to reporting work accidents. The witnesses testified about the safety meetings and the PTSA[1] forms which were signed at the end of the day to indicate the worker had no work injury. None of the witnesses could corroborate a work accident, despite Claimant testifying that he informed some of them of his injury. Additionally, Pala presented evidence to question Claimant's credibility and/or veracity by presenting evidence that Claimant spent 11 months in prison for credit card fraud.
* * *
The Court reviewed the record in this matter, including the testimony, depositions and medical records and upon doing such, the Court finds that Claimant is unable to sustain his burden in proving an accident as defined by La. R.S. 23:1021(1). Although there was a question regarding the existence of the PTSA for November 11, 2016, Claimant did not testify that he followed protocol regarding signing in and out on the PTSA. He did not dispute signing in and out on each day. He asserted that he reported his accident to Ward, but neither Ward nor any other supervisor or worker had any knowledge of the alleged accident. Claimant's testimony lacks credibility and the evidence presented casts doubt regarding whether he sustained injuries as a result of a work accident. As such, Claimant has failed to sustain his burden to prove that a work related accident occurred November 2016 and that he sustained injuries as a result of said work accident.
This appeal followed.
STANDARD OF REVIEW
In a workers' compensation case, the employee bears the burden of proving an accident occurred, that it occurred in the course and scope of her employment, the accident caused her injury, and the injury caused her disability. Guevara v. Brand Energy & Infrastructure Servs., 13-331 (La. App. 5 Cir. 10/30/13), 129 So.3d 625, 631, writ denied, 13-2782 (La. 2/14/14), 132 So.3d 964 ; Gray v. H.B. Zachary Const. Co., 01-276 (La. App. 5 Cir. 9/25/01), 798 So.2d 271, 274, writ denied, 01-2847 (La. 1/4/02), 805 So.2d 207.
The workers' compensation court's determinations as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Guevara, 129 So.3d at 635; Dean v. Southmark Constr., 03-1051 (La. 7/6/04), 879 So.2d 112, 117. The findings of the workers' compensation court will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Dean, 879 So.2d at 117. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. The determinations by the workers' compensation court as to whether the claimant's testimony is credible and whether the claimant has discharged his burden are factual determinations that will not be disturbed on appeal in the absence of manifest error or unless clearly wrong.
*955 Forbes v. Metro. Developmental Center, 09-901 (La. App. 5 Cir. 3/9/10), 35 So.3d 377, 382 ; Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992).
FACTS AND TRIAL EVIDENCE
On appeal, claimant contends that the workers' compensation court erred in finding that he did not establish a work-related accident and injury.[2]
A workers' compensation claimant must establish a "personal injury by accident arising out of an in the course of his employment." La. R.S. 23:1031 A. An accident is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). A claimant has the burden of proof to establish that a work-related accident occurred by a preponderance of the evidence. Bruno, 593 So.2d at 361 ; Jimmerson v. Johnson Storage & Moving Co., 13-962 (La. App. 5 Cir. 5/14/14), 142 So.3d 111, 115. An employee may prove by his testimony alone that an unwitnessed accident occurred in the course and scope of employment if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the claimant's version of the incident; and (2) the claimant's testimony is corroborated by the circumstances following the alleged incident. Jimmerson, 142 So.3d at 116. In determining whether the claimant has discharged his burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Id. at 116. A claimant may corroborate his testimony concerning the accident with objective medical evidence or testimony from follow workers or his spouse. Hamilton v. Compass Grp. USA/Morrison, 07-501 (La. App. 5 Cir. 11/27/07), 973 So.2d 803, 806-807.
Claimant testified that he was employed by Pala as a welder on November 10, 2016, when he sustained an injury to his back while pulling pontoon and deck legs on Tank 308.[3] When he initially started working on Tank 308, the crane and leg puller were not on site. He testified that it was "Gus, myself, Gary Schroder [sic] and Tyler *956 Johnson and Shane O'Brien" working on the tank, along with Donna John who was on fire watch. He testified that despite the crane and leg puller not being available, Melvin Ward, the site superintendent at Pala, told him to start pulling the legs by hand.
At trial, claimant testified that he hurt his back when he grabbed one of the legs, the others let go, and the leg "came down on me and jerked me back."[4] Afterwards, he told Mr. Ward two different times that he had hurt his back. He stated that Ms. John was present when he told Mr. Ward that he hurt his back pulling the legs by hand. He also told Mr. Stevens, the foreman, and his co-employee, Mr. O'Brien, that he hurt his back pulling the legs. Besides pulling the legs by hand, he had to help carry the legs to a "basket with a rack." He would carry the legs by himself or with another to the rack and afterwards his back and legs were sore. Claimant testified that they pulled around "30, 40" legs by hand before the crane and leg puller arrived later that afternoon. By his calculations, the legs weighed 149.9 pounds.[5] Because his back was hurting, he took prescription strength Advil every day until last day before Thanksgiving.[6] Claimant testified that the job on Tank 308 took four days.
Claimant testified that Pala had requirements for reporting work-related accidents or injuries. Employees are "supposed to report it, and then they're supposed to make a note of it." Claimant stated that employees are required to report any accidents or injuries to Mr. Ward. Once an accident or injury occurs, there are "forms" to fill out. Claimant admits that a report was not filled out that day. Claimant testified that every day employees have "sign-in sheets" but denied that the sign-in sheets required employees to certify that they were not hurt on the job that day. Claimant testified that he complained to his co-workers, "Gary, Gus, Donna, Van, and Ray Burt" that his back and leg were bothering him.
After the work was completed on Tank 308, claimant testified he worked on Tank 72. He stated that he was able to sit down to weld and there were 24 "bad welds" to fix on Tank 72. He testified that he did not work in the pontoon area on that tank; rather, he worked for the remaining two-week period on the outside of the tank. He stated that he did have to do climbing and scaffolding work and he had to pull up his own equipment to where he was working, but that the equipment only weighed "Five pounds, maybe." Claimant testified he continued to work for Pala until the day before Thanksgiving, November 23, 2016.
On November 27, 2016, claimant testified he woke up with a sharp pain in his back and was unable to move. He started having pain in his lower back and he stated before it was "up in like a spasm. This time it was actually in my lower back." He stated that he also started having leg pain. His fiancé, Tina Daigrepont, took him to the hospital where he told them that he hurt his back at work.[7] On the same day *957 he testified that he reported his work-related injury to Will Serin, a safety person at Pala, who told him to call "Ms. Felicia" with human resources. He also reported his work-related accident to "Ms. Felicia." Claimant testified that he never told anyone at Pala that he sustained a non-work-related injury. He testified that he was unable to continue working due to his work-related injuries. Claimant admitted that despite allegedly being unable to work for Pala due to his injury, he started working for another company in December 2016, he subsequently worked for several other companies thereafter, and was currently employed.
Claimant's fiancé, Tina Daigrepont, testified that prior to November 2016, claimant did not have any problems with his back. However, in November 2016, claimant came home one evening and told her he was "hurting." Ms. Daigrepont testified that claimant told her that that he hurt his back when he was working on a tank. She took claimant to the hospital on November 27, 2016, after he woke up "screaming" and could not move. She testified that claimant has worked since he left Pala in November 2016.
Melvin Ward, site superintendent at Pala, testified that claimant was a good worker, he did not have any physical problems, nor did he ever complain about any physical problems. Mr. Ward testified that he did not witness a work-related accident, claimant never reported a work-related accident or injury, and he was not informed by the foreman of a work-related accident involving claimant. He testified that Pala had a procedure for reporting accidents. He stated that the usual procedure is for the injured person to inform his foreman, who would then inform him or the safety person. If an employee reported an accident to him, he would report the accident to his safety person.
Mr. Ward testified that after completing work on Tank 308, claimant worked on Tank 72 fixing "bad welds," "gouging," "pontoon work," and "fixing repairs for X-rays." He worked with claimant on Tank 72 until the day before Thanksgiving, then he was off for a week. Claimant did not have any physical problems working on Tank 72. When he came back to work, he was told that claimant was out for a non-work-related incident.
Van Stevens testified that he was a foreman at Pala in November 2016. He did not remember employees pulling legs by hand and then requesting a crane for the work on Tank 308. He testified that it took "about two days" to pull the legs, which were pulled with a leg puller or crane. Claimant never informed him that he sustained a work-related injury. He stated that Pala's procedure for reporting accidents or injuries is for the employee to report it to him and then he would report it to the safety person and his supervisor. Pala requires PTSA forms for every job and employees are required to state if they are injured on the form. After he found out about claimant's claim, he spoke to the individuals who worked on Tank 308. He was told the same thing, "that all [claimant]
*958 was doing was wiping the legs off. [Claimant] wasn't even pulling on the chain fall, and that's all I heard from any of them." Claimant's co-workers each informed him "I never heard him say that he hurt himself."
Mr. Stevens testified that after working on Tank 308, claimant worked on Tank 72 with other employees, including David Leet, where claimant did welding and grinding inside the pontoons. He stated that a pontoon is "a small area, usually a confined space when you go into a pontoon" and to get into a pontoon, a person has to go in "head first or feet ... you've got to kind of slide down in it." He did not notice anything about claimant that would suggest claimant hurt his back. Claimant did tell him sometime during November that he had a doctor's appointment after Thanksgiving. He testified he called claimant after his doctor's appointment and asked him when he was coming back, to which claimant informed him that he had to have an MRI and he already talked to human resources. Claimant specifically told him that it was "a non-work-related injury." He testified that when claimant first came to work at Pala, claimant told him that he had a "bad sciatic nerve," but that it did not affect his work.
William Corbett, the site safety manager at Pala, testified that Pala's procedure for reporting accidents or injuries was for the employee to tell his supervisor, and if he was not available, inform his foreman, superintendent, and/or safety manager. He received a text message from claimant on November 27, 2016, stating that he went to the doctor, was prescribed medicine and inquired if he could work while on the medication. By text, he told claimant to contact Mr. Ward or William Serin, the site safety person. Afterwards, he called claimant to talk. Claimant informed him that he "pulled a muscle or something in his back ... it was a sciatic nerve." Mr. Corbett testified that the first question he asked claimant was whether his injury was work-related, to which claimant told him, "No." Claimant did not tell him he sustained a work-related injury. Mr. Corbett testified as to Pala's procedures on reporting accidents or injuries and indicated that the first thing to do if someone is injured is make sure the individual gets medical attention, if necessary. As part of his job, he would report any incidents to the corporate office and to the safety person, and at that point, formal documents would be generated and statements would be taken regarding the incident. No such documents were generated in this case. Pala had safety meetings where employees were informed that they needed to report any work-related accidents or injuries. Pala also used daily PTSA forms. The PTSA stated the work to be performed, the hazards, and how to mitigate hazards. The employees signed in on the PTSA, if there are no changes, they initialed the document at lunch, and then signed out certifying they were not injured. If someone was hurt, Pala's policy required the employee to inform their supervisor and the employee would not sign out on the PTSA because "the signature to sign off states that you're okay."
In her deposition, Donna John testified she was employed by Pala and worked "fire watch" on Tank 308. She testified that it took more than three days to complete and some of the legs were pulled manually. On the first and second days, the outside legs were pulled manually. She testified that eight to ten outside legs were pulled manually. She could not recall if any of the inside legs were pulled manually but stated "probably" because the leg puller was not available "the first few days." A few days later, claimant complained that his back was hurting and asked for Ibuprofen, which she gave to him. Claimant *959 never complained of pain nor did he appear to be hurt prior to working on this tank. When asked if claimant told her that he hurt his back pulling legs, she stated that claimant complained to Mr. Ward that the legs were "too heavy' " and that Mr. Ward needed to get a crane. She did not hear claimant tell Mr. Ward or anyone else that he was hurt. Claimant never told her he was injured at work. She could not say that Mr. Ward, Mr. Stevens, or "Teapot" knew that claimant's back was hurting.
Ms. John testified that Pala held daily toolbox/safety meetings and at no time did claimant complain about being hurt during any of the meetings. Claimant only complained about needing a crane to pull the legs; he did not complain about "pain or anything." Pala required all employees to sign out at the end of day stating that they did not have an accident. Ms. John stated that she took photographs of some of the work performed on Tank 308, despite being against the plant's policy, which she subsequently gave to claimant after he left Pala.
Shane O'Brien testified in his deposition that he was employed by Pala in November 2016 as a welder and worked with claimant on Tank 308 pulling legs and drilling holes. He testified that they pulled legs for two days and he worked with "Gary, Ray, Gus, and Reggie, and Donna was a fire watch." The legs weighed about 75 pounds. The pontoon legs were pulled with a crane while the deck legs were pulled with a leg puller. He testified that they "left the older guys with the crane because it's easier" and he went with Tyler and Gary to pull legs with the leg puller. Claimant stayed with the pontoons. Mr. O'Brien testified that he, Tyler, and Gary tried to pull one leg up manually, with claimant wiping oil off the bottom of the leg, but they could not get the leg up so they set it back down. After that the crane arrived, they started pulling the pontoon legs and the leg puller arrived shortly thereafter. Claimant did not have any physical problems prior to or after working on this tank and he did not complain to anyone about his back hurting. If someone gets injured, the procedure is to report it to the foreman. Pala held daily morning meetings where they discussed safety and daily tasks. Mr. O'Brien testified that claimant called him "at least a month after" the job asking him if he had any video of the crew working on the tank and informed him at that time that he hurt his back pulling legs.
In his deposition, Gary Schroeder testified that he was a welder at Pala in 2009 and in 2016. When he first came back in 2016, he did not notice any physical impairment with claimant prior to working on Tank 308. However, he testified that in September 2016, before this alleged accident, claimant complained about his "butt cheek.... He said he had a nerve or something ... something about sciatic." Mr. Schroeder testified that on Tank 308 they used the crane for the pontoon legs and then he, Tyler and Shane used the leg puller on the inside deck legs. Claimant, "Gus, and Ray Bird" were using the crane while Ms. John was the "hole watcher." Claimant helped wipe the oil off the end of the legs pulled by the leg puller when he finished with the crane. He does not remember trying to pull a leg up by hand. Claimant never told him that he hurt his back pulling legs.
Gus Wehmeyer testified that he worked with claimant on Tank 308 in November 2016, for approximately a week. Mr. Wehmeyer testified that some of the deck legs were pulled with the crane and some were pulled with an "A-frame" (leg puller). While some of the legs were being pulled with the leg puller, some of the crew pulled legs manually to try to "speed the job along to where we could hurry up and *960 get out of there." He testified they pulled several legs up by hand and claimant helped. The legs weighed between 100 and 150 pounds.
Mr. Wehmeyer testified that claimant mentioned that his back was hurting "at one time." However, claimant did not specifically tell him that he hurt his back on the job. He did not hear claimant tell anyone else that he had an accident or hurt his back manually pulling legs. He did not remember if claimant took Ibuprofen, or claimant having any problems before working on this tank. Mr. Wehmeyer testified that after claimant left Pala, claimant called and told him that "he had something working against Pala." Claimant said he "hurt his back and wanted to make it look like he got hurt on-the-job." Claimant told him that if he testified against Pala, he would "make it worth your wild [sic ]." He testified that he "did not take it seriously." Mr. Wehmeyer testified that the handwriting in the affidavit is not his, but he read the affidavit and signed it. If an accident occurred, the employees were to inform the "nearest supervisor," who would inform Mr. Ward, and Mr. Ward would inform Mr. Corbett, the safety person. Pala also had toolbox/safety meetings every day and if an individual was hurt they had the opportunity to report it at the meeting. He could not remember if they signed anything at the end of the day stating that there were no accidents or injuries.
At trial, David Leet, a welder at Pala, testified that he worked with claimant on Tank 72. On Tank 72, they were working on a scaffold, going up and down the ladder multiple times, and they had to pull up and down their equipment for the job. He testified that the equipment they pulled up in buckets multiple times a day weighed 25-30 pounds. He testified that they also worked inside the tank, stating, "We had about a 20-inch manway you had to crawl through to get up on the roof." They worked inside the pontoons and would "crawl in and out that darn hole a bunch of times through the day, just go in there and weld. It's a pretty tight area to be working in." He testified that if your back was hurt you would not be able to crawl through a pontoon. Claimant never told him that he hurt his back on the job and he never observed anything indicating that claimant had a back injury. He worked approximately two weeks with claimant on Tank 72, claimant performed his job without any problems, and claimant never complained about his back. As for Pala's accident reporting procedure, Mr. Leet testified that employees are supposed to report accidents or injuries immediately. Additionally, Pala requires the employees to sign in on a "JSA"[8] form in the evening, and if injured, you are not supposed to sign the document.
Jeremy Guidry, the corporate risk manager at Pala, testified that a PTSA form is filled out on a task basis and if there are any changes, it is updated. In the morning everyone signs in on the PTSA, which essentially states that the individual acknowledges they are aware of the hazards. At the end of the day, individuals sign out, stating that they were not involved in an accident or injured. If an individual is injured they are not supposed to sign out on the PTSA. The individual would get with the foreman who was responsible for documenting the accident or injury. The foreman is the last person to sign out on the document after he validates that all employees were "okay" and there were no accidents. Pala has a toolbox meeting everyday where the PTSA is completed and safety is discussed with the employees. Mr. Guidry testified that he was informed by human resources that claimant was out *961 for a non-work related injury. Mr. Guidry testified that he met with Mr. Wehmeyer and the statements made by Mr. Wehmeyer in his affidavit accurately portrayed his conversation with Mr. Wehmeyer. Mr. Wehmeyer relayed the same information to him two different times, once after claimant filed his claim and once with Pala's counsel. When asked why the November 11, 2016 PTSA form was missing, Mr. Guidry testified that he could not answer that without going back and verifying some facts, but he said that Pala does not "work when it rains so we've got rain outs."
LAW AND ANALYSIS
In this case, the workers' compensation court had to determine whether (1) there was any other evidence presented that either discredited or cast serious doubt on the claimant's account of the alleged work-related accident; and (2) whether other evidence existed that corroborated claimant's account. Based on a review of the record, we find that the workers' compensation court was not manifestly erroneous or clearly wrong in finding that claimant did not prove he sustained a work-related accident or injury.[9] As discussed above, a claimant can meet his burden of proving a work-related accident by his own uncontradicted testimony "absent circumstances casting suspicion on the reliability of his testimony." Ricks v. Odyssey Health Care, 10-1099 (La. App. 5 Cir. 10/25/11), 77 So.3d 386, 388. The record shows several inconsistencies in and contradictions of claimant's testimony as to cast suspicion on the reliability of his testimony. Specifically, testimony of claimant's supervisors and co-workers and some other evidence do not corroborate claimant's contention that he sustained a work-related accident. Thus, we cannot say the workers' compensation court was manifestly erroneous in finding claimant did not carry his burden of proving his injury resulted from a work-related accident.
Because we find that claimant did not maintain his burden of proving a work-related accident, we pretermit the issue of whether claimant sustained a work-related injury.
DECREE
For the reasons stated above, we affirm the workers' compensation court's September 10, 2018 judgment.
AFFIRMED

Pre-test Safety Analysis

Specifically, claimant asserted the following assignments of error: (1) "The trial court erred in its finding that Claimant failed to prove an injury as a result of a work accident;" (2) "The trial court erred in making a finding that Claimant failed to sustain his burden of proof to establish he sustained an on-the job accident or injury;" (3) "The trial court erred in, when judging credibility, the court failed to consider the false testimony of Employer's witness concerning the report of a work accident and giving inappropriate weight to Claimant's felony conviction;" (4) "The trial court erred in failing to give great weight to undisputed medical testimony that corroborates Claimant's testimony as to sustaining an injury in a work accident;" (5) "The trial court erred in failing to consider and give any weight to facts deemed admitted by law."

At trial, claimant testified that the accident occurred on November 10, 2016. In his prior deposition testimony, claimant testified that the accident occurred on November 9, 2016. The PTSAs show that on November 9 and 10, 2016, claimant was working on Tank 72 not Tank 308. There is no PTSA for November 11, 2016. The PTSA for November 12 and 13, 2016, indicate that claimant worked on Tank 308 pulling legs and on November 14, 2016, claimant worked on Tank 308 drilling holes in the legs that were previously pulled. On November 15, 2016, claimant started working on Tank 72. It is not until November 22, 2016, that claimant helped re-install the legs on Tank 308. Thus, according to the PTSA, the work on Tank 308 took four days. There is no indication in the record that claimant worked on Tank 308 on November 11, 2016, the day the PTSA is missing.

However, in his deposition, he testified that he hurt his back two different times, once pulling a leg up by hand and once carrying the leg by himself to the rack and in his disputed claim he stated that he hurt his back carrying a leg to the rack.

However, in his deposition, claimant testified that the legs each weighed 105-110 pounds.

Claimant testified that he received the prescription strength Advil from Donna John.

The medical records show that on November 27, 2016, claimant presented to the hospital with a chief complaint of leg pain and was diagnosed with left-sided sciatica. The only notation in the record indicating a work-related injury states "left leg went to sleep and now with shooting pain, after a welding accident." However, as claimant testified, his alleged injury was not sustained in a "welding" accident; rather it was alleged claimant was injured from pulling pontoon legs by hand. The medical records for November 29, 2016, show that claimant appeared at the hospital for a follow up with primary diagnosis of "left sided sciatica." The records indicate that claimant "had some back pain but does not have back pain at the present time, however, he has numbness of the left foot, pain in the left buttock from time to time, he has to do a lot of climbing at work, up to a tower where he is in a confined space where he had to do welding work. The back pain has been going on for about 2 weeks, he had never had back pain prior to our visit today."

According to trial testimony, JSA and PTSA forms are essentially the same, although different terminology is used by the employees at various plants.

Claimant argues that the trial court abused its discretion in not finding claimant's requests for admissions to be deemed admitted due to Pala's untimely response. Louisiana courts have allowed late-filed denials to requests for admissions to constitute requests for withdrawal of those admissions, even if the responses were provided extremely late and were not presented to the court by a motion to withdraw or amend the admissions. We find the trial court did not abuse its discretion in not finding the requests for admissions to be deemed admitted. Claimant admits that Pala filed a response, albeit untimely, and a review of the record reveals that in response to the claimant's disputed claim, Pala filed a denial of the allegations and continually defended against the allegations sought to be admitted by claimant's requests for admissions.